22168

The STATE, Respondent, v. Wardell PATTERSON, Jr., Appellant.

(327 S. E. (2d) 650)

Supreme Court

*David I. Bruck,* Columbia, *Sam B. Fewell, Jr.,* Rock Hill, and *William Isaac Diggs, Deputy Appellate Defender,* Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Harold M. Coombs, Jr., Asst. Atty. Gen.,* Columbia, and *William L. Ferguson, Sol. of the Sixteenth Judicial Circuit,* York, *for respondent.*

Heard Sept. 12, 1984.

Decided Oct. 10, 1984.

HARWELL, Justice:
Appellant Wardell Patterson, Jr. was found guilty of murder and armed robbery by a York County jury and sentenced to death pursuant to S. C. Code Ann. § 16-3-20 (1983) for murder and twenty-five years imprisonment for armed robbery. The case is before this Court pursuant to appellant's direct appeal and the mandatory review provisions of S. C. Code Ann. § 16-3-25 (1983). We affirm.

On August 18, 1980 at approximately 4:20 A.M. a newspaper delivery person, Mrs. Selby, arrived at the Fast Fare convenience store parking lot at Tega Cay. She saw two black females leave the store and walk toward the road. She then heard the loud noise of a shotgun firing and observed a black male holding a shotgun in the doorway of the store. The gunman "trotted" away in the same direction the girls had

taken. Without delay, Mrs. Selby saw a dark blue car without its lights burning screech off toward Charlotte, North Carolina. She entered the store and found the employee, Ted Graham, still breathing but lying in a pool of blood with a shotgun wound one inch by two inches in the back of his skull. The appellant was arrested and indicted for murder and armed robbery.

## GUILT PHASE

The appellant asserts that three alleged errors in the guilt phase of the trial justify reversal of his convictions. He first contends that the court erred in denying his motion for mistrial on the basis of the solicitor's direct examination of the police officer who took the appellant's statement. We disagree.

The appellant made a statement to police while in custody admitting that he participated in the armed robbery. When questioned about the shooting, however, he became silent. At trial, the court heard an *in camera* recitation of the officer's testimony regarding the statement and found that the appellant had knowingly and intelligently waived his right to remain silent and to have counsel present and had made the statement freely and voluntarily.

The officer then testified to the jury concerning the statement, including the appellant's "mute" response to questions about the murder. The appellant's counsel did not object to the testimony. The court on its own motion then initiated a request for a jury instruction. The appellant moved for a mistrial. The judge denied the motion but gave a curative charge:

> . . . [c]ertain questions were asked of Captain Ferrell, as to whether he had asked the Defendant about the shooting of the clerk in the Fast Fare Store. As to those particular questions and the answers of Captain Ferrell, those questions and Captain Ferrell's responses are not evidence in this case. They are not to be considered. You are to erase those particular questions and answers completely from your minds and they are not to be considered by you in any way nor mentioned in your deliberations in the jury room as evidence for or against the Defendant in this case.

The appellant asserts under *Miranda v. Arizona,* 384 U. S. 436, 468, n. 37, 86 S. Ct. 1602, 1624, n. 37, 16 L. Ed. (2d) 694 (1966), that the prosecution impermissibly penalized him for exercising his Fifth Amendment privilege. We conclude that, if error, the solicitor's questioning was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. (2d) 705 (1967).

The court's jury instruction was sufficient to cure any prejudice to the appellant. *State v. Campbell,* 259 S. C. 339, 191 S. E. (2d) 770 (1972). The appellant's two skilled trial attorneys did not notice any potential prejudice until the judge called the situation to their attention. Furthermore, the appellant's silence when questioned about the murder, in contrast to his admissions of armed robbery, coincided with his defense that he was not the triggerman. The circumstances of the case minimize the prejudicial impact of the evidence. An officer had previously testified that the appellant stated at his arrest, "I didn't shoot anybody." *See State v. Smallwood,* 277 Or. 503, 561 P. (2d) 600 (1977), cert. denied, 434 U. S. 849, 98 S. Ct. 160, 54 L. Ed. (2d) 118; *State v. Nulph,* 31 Or. App. 1155, 572 P. (2d) 642 (1977).

The second alleged error in the guilt phase concerns the judge's *Miranda* jury charge. The appellant asserts that the judge erred in failing to advise the jury that it could not consider the appellant's statement unless it found he both understood and waived his right against self-incrimination.

The trial judge, after the *in camera* hearing, found that the appellant "knowingly and intelligently made the statement and knowingly and intelligently waived his Constitutional Rights to remain silent." However, since the appellant stated that he had requested a lawyer to no avail and denied making part of the statement, the judge submitted the issue to the jury. *State v. Adams,* 277 S. C. 115, 283 S. E. (2d) 582 (1981); *State v. Adams,* 279 S. C. 228, 306 S. E. (2d) 208 (1983). The trial judge charged the jury that the statement must have been given "freely and voluntarily" ... "under the totality of the circumstances" and that "beyond a reasonable doubt the Defendant was given and understood his rights."

We find no reversible error in the judge's failure to require the jury, before considering the statement, to find a waiver of

constitutional rights. The jury could not have found that the appellant understood his rights and that the statement was given freely and voluntarily unless it believed that the appellant had waived his constitutional rights. This exception lacks merit.

The appellant next asserts error in the judge's failure to charge the law of accomplice liability for a murder committed during a felony, citing *Beck v. Alabama*, 447 U. S. 625, 100 S. Ct. 2382, 65 L. Ed. (2d) 392 (1980). *Beck* held that a jury in a capital case must be permitted to consider all lesser included non-capital offenses to the crime of capital murder when supported by the evidence.

We first note that the appellant made no request for such a charge at trial, nor did he raise the issue by exception. However, even if the matter were properly presented for our review, we find no error. South Carolina retains the common law rule of murder that the hand of one is the hand of all. *State v. Hicks*, 257 S. C. 279, 185 S. E. (2d) 746 (1971). Guilt through accomplice liability is not a lesser included offense of murder in South Carolina.

The appellant's reliance on *Enmund v. Florida*, 458 U. S. 782, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982) is also misplaced. *Enmund* held that the Eighth and Fourteenth Amendments forbid imposition of the death penalty upon a defendant who did not personally take life or intend that life be taken. The evidence in the case at bar supports the inference beyond a reasonable doubt that the appellant personally killed the victim or intended to take his life. The sentencing phase was the proper setting for the appellant's argument that the proof did not conclusively establish the appellant as the triggerman and that a life rather than death sentence was appropriate.

## SENTENCING PHASE

The appellant maintains that the trial court unconstitutionally restricted the jury from considering, during the sentencing phase, the possibility that the appellant did not personally kill or intend to kill the victim. This argument lacks merit. It is true that the trial judge refused to charge the statutory mitigating circumstance that "the Defendant was an accomplice in the murder committed

by another person and his participation was relatively minor." However, no evidence in the record supports a reasonable inference pursuant to S. C. Code Ann. § 16-3-20(C)(b)(4) (1983) that the appellant's participation in the murder was relatively minor. Furthermore, the judge's charge stated that the mitigating circumstances submitted to the jury in writing were examples only and that it could impose a life sentence for any reason at all. The refusal to charge this request was not error.

The appellant next asserts that the trial judge erred in excluding as mitigating evidence testimony of his good conduct in prison during the past two-and-a-half years. The State contends that, since the testimony was not introduced to show the appellant's character but to show future adaptability to prison life, it was inadmissible under *State v. Koon*, 278 S. C. 528, 298 S. E. (2d) 769 (1982). However, the testimony would have included past behavior and would have therefore been admissible to show the appellant's character. *State V. Stewart*, 320 S. E. (2d) 447 (1984).

Nevertheless, we conclude that in this case the evidence was cumulative. The defense presented six witnesses who testified as to the appellant's good character. The appellant's father testified that he was an obedient child who helped with household and dairy chores. According to the father, commission of murder was out of character for the appellant, and he still has some good in him.

The appellant's sister Yvonne stated that their sister Gerlene, who was an accomplice in the murder and armed robbery, had a strong influence on Wardell and that he is still a wonderful person. Roberta Land testified that Wardell had spent several nights at her home visiting her son, that he did not appear to be mean, and that he was well-mannered. The Reverend Dr. N. T. Strong had visited the Patterson home and found the home to be Christian and the children obedient. The appellant's grandfather, a director of the Family Development Corporation in Philadelphia, testified that his sons had already planned to bring the appellant into the company.

Finally, the appellant's employer on the day he committed the crime testified that he was an excellent, respectful worker and that she would be willing to rehire him in the future. This witness, unlike the appellant's family, was relatively un-

biased. Furthermore, she worked with the appellant regularly at the time he committed the crime.

In light of the above character evidence, we hold that any error in the exclusion of the proffered testimony from prison guards and a psychiatrist was harmless beyond a reasonable doubt.

The appellant finally contends that the trial court ■ improperly refused to charge the jury not to speculate as to whether a life or death sentence would deter similar crimes. The trial court correctly refused the charge. "[T]he sole function of the jury in a capital sentencing trial is the individualized selection of one or the other penalty, based upon the circumstances of the crime and characteristics of the individual defendant." *State v. Plath*, 281 S. C. 1, 313 S. E. (2d) 619 (1984).

## PROPORTIONALITY REVIEW

We have examined the other cases in this State in ■ which the death penalty has been imposed pursuant to Code § 16-3-25(C)(3). We conclude that, in light of the nature of the crime and the appellant's character, the sentence must be affirmed. (See cases collected in *State v. Koon*, Op. No. 22075, _____ S. E. (2d) _____ filed April 3, 1984). The appellant shot the victim in cold blood for pecuniary gain. The victim's autopsy revealed 30 to 40 pellet wounds to the head in addition to the one by two inch hole.

We have combed the record *in favorem vitae* and find no reversible error.

The convictions and sentences are, accordingly,

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and CHANDLER, JJ., concur.