22768

The STATE, Respondent v. Joseph Ernest ATKINS, Appellant.

(360 S. E. (2d) 302)

Supreme Court

*David I. Bruck, S. C. Office of Appellate Defense,* Columbia, *Charleston County Public Defender Joseph F. Kent,* and *David M. Adams,* Charleston, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Charles M. Condon,* Charleston, *for respondent.*

Heard May 4, 1987.

Decided Aug. 24, 1987.

HARWELL, Justice:

Appellant was convicted of two counts of murder, first degree burglary, unlawful possession of a sawed-off shotgun, two counts of assault with intent to kill, and unlawful possession of a pistol. Appellant received the death penalty for both counts of murder. This case is before this Court pursuant to appellant's direct appeal and the mandatory review provision of S. C. Code Ann. § 16-3-25 (1976). We affirm the guilt phase, reverse the sentencing phase, and remand for a new sentencing hearing.

## I FACTS

Appellant lived on one side of a duplex and his father, Benjamin Atkins, lived on the other side. The Polite family rented the tenant house located behind the duplex. This family consisted of Aaron Polite, his common law wife, Fatha Patterson, and their thirteen (13) year old daughter, Karen Patterson.

Just before daybreak on Sunday, October 27, 1985, Polite was awakened by a noise outside his home. He looked out the window and saw appellant walking toward appellant's

side of the duplex carrying a machete and a sawed-off shotgun. When Polite's wife tried to call appellant's father, she discovered that all the phones in the house were dead. Polite went to check the phone lines and his wife went to use Benjamin Atkins' phone. Polite returned to his room and, while waiting for his wife, heard a gunshot inside his house. When he reached the doorway of his bedroom, he saw appellant standing at his daughter's doorway holding his machete and sawed-off shotgun. When appellant turned and pointed his shotgun at Polite, Polite jumped through a closed screen door to get away. Appellant ran after Polite, shooting. Polite managed to escape uninjured.

Just as Patterson started to walk out Benjamin Atkins' door, she saw appellant aim the sawed-off shotgun at her. She screamed and backed away and Benjamin Atkins went to the door. Appellant shot his father in the shoulder area. Benjamin Atkins, who was bleeding heavily, became unconscious and collapsed. Several minutes later, he died from loss of blood. Patterson kicked the door shut and crawled through Benjamin Atkins' blood to get to the phone. As she was talking to the police, she heard gunshots coming through the walls. She started screaming, "Oh God, please help me." Appellant replied, "God can't help you now." Appellant then shot at the ground, shot out a window in his father's car, and fled on his motorcycle. After a four mile police chase, he was arrested. He had in his possession a .38 caliber pistol and a box of shotgun shells.

Expert testimony established that Karen Patterson, the thirteen (13) year old daughter, died from gunshot wounds to her head. The sawed-off gun was a single-shot shotgun which had to be unloaded and reloaded after every shot. No reason or explanation was given for the killings. At the time this incident occurred, appellant was on lifetime parole for a 1970 murder conviction.

## II JURY SELECTION

Appellant contends that the trial judge erred by denying appellant's statutory right to have his counsel examine prospective jurors prior to their disqualification on the basis of their opposition to the death penalty. We agree.

The trial judge briefly questioned the prospective jurors during *voir dire* before allowing the attorneys to question them. In several instances, once the judge determined that a prospective juror was opposed to the death penalty, the judge excused him without allowing either side an opportunity to question him. South Carolina Code § 16-3-20(D) (Supp. 1985) provides in relevant part that, "in cases involving capital punishment any person called as a juror *shall* be examined by the attorney for the defense." (emphasis added). In *State v. Owens*, 277 S. C. 189, 284 S. E. (2d) 584 (1981), this Court addressed this issue. While we ultimately found the issue to be moot in the *Owens* case because the defendant was given a life sentence, we did state that, "[d]uring *voir dire*, two prospective jurors were disqualified by the court when they indicated opposition to the death penalty. Appellant's attorney was not permitted to examine the two jurors. This was error. The evident purpose of Section 16-3-20(D) is to secure to defense counsel in capital cases the right to question jurors during their *voir dire* examination." *Owens*, 277 S. C. at 192, 284 S. E. (2d) at 586.

It is clear that the scope and duration of such examination is committed to the discretion of the trial judge. *State v. Patterson*, 290 S. C. 523, 351 S. E. (2d) 853 (1986); *State v. Koon*, 278 S. C. 528, 298 S. E. (2d) 769 (1982); *State v. Smart*, 274 S. C. 303, 262 S. E. (2d) 911 (1980). Both the case law and the plain language of S. C. Code Ann. § 16-3-20(D) (Supp. 1985) make it clear that the trial court's discretion does not extend so far as to authorize it to refuse counsel the right to conduct any examination at all in a capital case. When our legislature has seen fit to enact special statutory requirements to be followed in death penalty cases, the courts should endeavor to see that these are strictly followed.

It is true that before excusing the potential jurors, the judge first determined that the jurors were opposed to the death penalty. The United States Supreme Court stated in *Witherspoon v. Illinois*, 391 U. S. 510, 515 n. 9, 88 S. Ct. 1770, 1773 n. 9, 20 L. Ed. (2d) 776 (1968), however, that "[i]t is entirely possible that even a juror who believes that capital punishment should never be inflicted and who is irrevocably committed to its abolition could nevertheless subordinate

his personal views to what he perceived to be his duty to abide by his oath as a juror and to obey the law of the State." The purpose of Section 16-3-20(D) is, at least in part, to ensure that a defendant on trial for his life is afforded a personal opportunity to question each juror about this basic precept before the juror is challenged for cause. This right was denied on four separate occasions in this case. The error which occurred here may be harmless when the accused is sentenced to life imprisonment, *State v. Owens, supra,* but not when he is sentenced to death. The sentencing phase must be reversed and remanded.

### III GUILT PHASE

Appellant asserts that the trial judge erred in refusing to submit involuntary manslaughter as a possible verdict with respect to the homicide of thirteen (13) year old Karen Patterson. We disagree.

In support of his request for an involuntary manslaughter instruction, appellant points to the physical evidence suggesting that Karen was hit with a single shot from a substantial distance, that most of the shot missed her, and that the pellets which did hit her struck the upper portion of her head. Appellant submits that, based on this, the jury reasonably could have found that the fatal shot was fired recklessly at the wall of Karen's bedroom, and that appellant was guilty only of involuntary manslaughter.

Appellant's assertion is not supported by the record. The evidence established that the shotgun wounds to Karen's right hand demonstrated that she was most likely attempting to protect herself when the shot was fired. Additionally, the single shot to the head was fired with a shotgun at a distance of only five to fifteen feet. In the present case, the facts did not warrant a charge on the lesser included offense. *See State v. Craig,* 267 S. C. 262, 227 S. E. (2d) 306 (1976).

The presence of evidence to sustain a conviction for the crime of a lesser degree determines whether it should be submitted to the jury. *State v. Linder,* 276 S. C. 304, 278 S. E. (2d) 335 (1981). A lesser included offense instruction is required by due process only when the evidence warrants such an instruction. *Hopper v. Evans,* 456

U. S. 605, 102 S. Ct. 2049, 72 L. Ed. (2d) 367 (1982). It is not error to refuse to charge the lesser included offense unless there is evidence tending to show that the defendant was guilty only of the lesser offense. *State v. Thompson,* 278 S. C. 1, 292 S. E. (2d) 581 (1982); *State v. Mickle,* 273 S. C. 71, 254 S. E. (2d) 295 (1979). We find no error.

Appellant also argues that the trial judge failed to ■ adequately charge the jury on assault of a high and aggravated nature (AHAN). We find any error in this charge to be harmless beyond a reasonable doubt.

In addition to the murders of Karen Patterson and Benjamin Atkins, appellant was charged and convicted of assault with intent to kill (AWIK) Aaron Polite and Fatha Patterson. This charge stemmed from appellant's actions in pointing the shotgun at Polite and firing after him repeatedly as Polite fled, and in pointing the shotgun at Patterson and repeatedly firing at her through the walls of the duplex.

The trial judge correctly charged the jury on assault with intent to kill. At defense counsel's request, he also charged the jury on AHAN. It is this charge on the lesser included offense of AHAN that appellant contends was erroneous. Under the facts of this case, we find that appellant was not entitled to a charge on AHAN and, therefore, any error in that charge is harmless beyond a reasonable doubt.

Polite testified that he saw appellant aim the shotgun at him and heard him fire as he ran away. Patterson testified that she saw appellant aim the shotgun at her and that later he shot at her through the duplex walls. If the offense would have been murder had the victim died as a result of assault, then the appropriate offense is AWIK rather than AHAN. *See State v. Scott,* 269 S. C. 438, 450, 237 S. E. (2d) 886, 892 (1977) and *State v. Jones,* 133 S. C. 167, 179-80, 130 S. E. 747, 751 (1925). If Polite or Patterson had died, there is no question that appellant would have been guilty of murder not involuntary manslaughter. Since the victims did not die, the appellant's actions constitute AWIK not AHAN. The AHAN charge did include certain elements, such as an explanation of sudden heat of passion, legal provocation, and cooling time, which were not appropriate under the facts of this particular case. Since the defendant was not entitled to have this AHAN charge given at all, he can not be heard to

complain about any error in that charge. Since the jury found appellant guilty of both counts of AWIK even though the judge also gave a charge of AHAN, it necessarily found all of the elements of AWIK to be present. Error, if any, in the AHAN charge is harmless beyond a reasonable doubt.

## IV PENALTY PHASE

Appellant claims that, given the facts of the present case, the trial judge should have instructed the jury on the law governing parole consideration in capital sentencing. The trial judge properly declined to give such instructions based on our decisions in *State v. Norris*, 285 S. C. 86, 328 S. E. (2d) 339 (1985) and *State v. Butler*, 277 S. C. 543, 290 S. E. (2d) 420 (1982). No error was committed by the trial court. In all death penalty cases which proceed to trial after this opinion is published, *if requested by the defendant*, the trial judge shall charge the jury that the term "life imprisonment" is to be understood in its ordinary and plain meaning.

In death penalty cases controlled by the Omnibus Criminal Justice Improvements Act of 1986, 1986 S. C. Acts 2955, which proceed to trial after this opinion is published, *if the defendant so requests,* he may have the following charge given *in lieu* of the "life imprisonment is to be understood in its plain and ordinary meaning" charge:

> A person who is convicted of murder must be punished by death or by imprisonment for life. When the state seeks the death penalty and a statutory aggravating circumstance is specifically found beyond a reasonable doubt, and a recommendation of death is not made, the trial court must impose a sentence of life imprisonment without eligibility for parole until the service of thirty years. When a statutory aggravating circumstance is not found beyond a reasonable doubt, the defendant shall be sentenced to life imprisonment and he shall not be eligible for parole until the service of twenty years. No person sentenced under either of the sentencing schemes just explained may receive any work-release credits, good-time credits, or any other credit that would reduce the mandatory imprisonment.

Affirmed in part; reversed in part; and remanded.

NESS, C. J., GREGORY, FINNEY, JJ., and LITTLEJOHN, Acting Associate Justice, concur.