23509

The STATE, Respondent v. Wilbert Ray DAVIS, Appellant.

(411 S.E. (2d) 220)

Supreme Court

*Chief Atty. David I. Bruck* and *Asst. Appellate Defender Joseph L. Savitz, III* of the *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *William Edgar Salter, III,* Columbia, and *Sol. Dudley Saleeby, Jr.,* Florence, *for respondent.*

Heard Sept. 25, 1991; Decided Nov. 12, 1991.

Reh. Den. Dec. 16, 1991.

GREGORY, Chief Justice:

Appellant was convicted of murder and conspiracy and sentenced to death. We reverse and remand for a new trial.

## JURY SELECTION

The Solicitor exercised four of his five peremptory strikes in selecting the regular jury panel and used one strike in selecting the alternates. All of the strikes were used against female black jurors. In response to appellant's *Batson*[1] motion, the trial judge found a prima facie showing of discrimination. The Solicitor then offered reasons for the exercise of his strikes which the trial judge found race-neutral.

■ On appeal, appellant claims the record does not support the trial judge's finding as to juror Ida Burch. We agree.

On voir dire, Juror Burch satisfactorily answered the trial judge's questions regarding her ability to consider the death penalty. The Solicitor then questioned her and elicited the following responses:

Q. If the jury finds the defendant guilty then the same twelve people set the punishment in the case. It's either the death penalty or life imprisonment. Would you be able to sit and make your decision as to which punishment was proper, life imprisonment or the death penalty based on what you heard?

A. Yes.

Q. If, and the law says if the jurors agree that the death penalty is the proper penalty they have to sign a form stating that is their decision. Would you have any trouble in doing that?

A. Well, I might have a little about that. But I would still go by what, as the Judge asked me before, what my

---

[1] *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986).

opinion [sic]. I listen to the case and I would give my own opinion what is right and what is wrong. So I would still go by what I know, what I think is right.

Q. That is simply what I am asking you. You could decide in a certain case that the death penalty was right?

A. Yes.

Q. And if you decided that that was right you could sign your name stating that was your decision?

A. Yes.

Q. Thank you ma'am.

In explaining his reason for striking Juror Burch, the Solicitor stated:

When it came to the question of whether or not she could sign the form she hesitated and said she might have trouble doing that. And she repeated that on more than one occasion. . . . She . . . showed great reluctance.

It is well-settled that vacillating responses to voir dire questions regarding the death penalty will support the use of a peremptory strike against a *Batson* challenge. *State v. Bell,* — S.C. —, 406 S.E. (2d) 165 (1991); *State v. Green,* 301 S.C. 347, 392 S.E. (2d) 157 (1990); *State v. Elmore,* 300 S.C. 130, 386 S.E. (2d) 769 (1989). Where the Solicitor perceives a person will have difficulty imposing the death penalty, he may exercise a peremptory challenge against that juror upon this ground as a racially neutral reason. *State v. Bell, supra.* Moreover, because the trial judge's findings regarding purposeful discrimination rest largely upon his evaluation of the Solicitor's credibility, we will give those findings great deference. *See Hernandez v. New York,* 500 U.S. —, 111 S. Ct. 1859, 114 L. Ed. (2d) 395 (1991).

In this case, however, the record indicates the Solicitor's evaluation of Juror Burch's responses on voir dire is not supported by the record. Juror Burch did not demonstrate "great reluctance" regarding her ability to vote for imposition of the death penalty. In fact, in her responses to questioning, Juror Burch did not vacillate at all in asserting her ability to consider a death sentence.

On appeal, the State relies heavily on Juror Burch's response, when asked whether she would have trouble signing

her name if the jury voted for death, that she "might have a little." In making this argument, the State takes this response out of context and ignores the remainder of Juror Burch's response that she in fact could sign her name if she decided a death sentence was appropriate.

Because the record does not support the Solicitor's stated reason for striking Juror Burch, we find the trial judge erred in ruling the Solicitor offered a race-neutral reason for the exercise of this strike.

## SENTENCING PHASE

In view of our disposition in this case, we need not consider sentencing phase errors, however, we address the following issues to emphasize basic principles governing the conduct of the sentencing phase of a capital case.

First, appellant requested a charge instructing the jury that its sentencing recommendation would be accepted by the judge and the sentence imposed accordingly. The trial judge refused this request insisting "that's not the law."

Since *State v. Bellamy*, 293 S.C. 103, 359 S.E. (2d) 63 (1987), this Court has required that the trial judge convey to the jury in the sentencing phase of a capital trial the idea that its sentencing recommendation will be followed. This requirement comports with the rule that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell v. Mississippi*, 472 U.S. 320, 328-29, 105 S. Ct. 2633, 2634, 86 L. Ed. (2d) 231, 239 (1985). Not only did the trial judge refuse appellant's requested charge, *nowhere* in the record does the trial judge refer to the jury's sentencing decision as anything more than a recommendation. *Cf. State v. Sims*, — S.C. —, 405 S.E. (2d) 377 (1991); *State v. Cain*, 297 S.C. 497, 377 S.E. (2d) 556 (1988); *State v. Middleton*, 295 S.C. 318, 368 S.E. (2d) 457 (1988). This is reversible error. *State v. Plemmons*, 296 S.C. 76, 370 S.E. (2d) 871 (1988).

Second, regarding the jury's option of imposing a death sentence or life imprisonment, appellant requested a charge that "these sentences mean what they say." Again, the trial judge refused the request as an incorrect

statement of law. Since *State v. Atkins*, 293 S.C. 294, 360 S.E. (2d) 302 (1987), this Court has held that where a capital defendant requests it, a charge must be given at the sentencing phase that the term life imprisonment is to be understood in its ordinary and plain meaning. It is reversible error to refuse such a request.

The State contends this Court recently removed parole as a consideration for the jury in *State v. Torrence*, — S.C. —, 406 S.E. (2d) 315 (1991), thus overruling *Atkin's* holding to the contrary, and therefore the plain meaning charge is no longer required. The plain meaning charge was required in *Atkins* as an *alternative* to a charge on parole eligibility. We now clarify that in eliminating the consideration of parole, *Torrence* leaves intact the defendant's right upon request for a plain meaning charge.

Finally, appellant chose to exercise his right to make a statement to the jury pursuant to S.C. Code Ann. § 16-3-20(C) (Supp. 1990) which allows both the defendant and his counsel to "present arguments for or to against the sentence to be imposed." The trial judge instructed appellant that he was not to "talk about any of the facts that surround the incident." This restriction of appellant's statement was improper. Although, of course, the trial judge may prohibit a defendant from offering unsworn testimony in his statement to the jury, a defendant may present argument regarding facts that are in evidence to direct the jury's attention to the circumstances of the crime or the defendant's own characteristics since these are proper sentencing considerations. *See State v. Atkins*, — S.C. —, 399 S.E. (2d) 760 (1990); *State v. Shaw*, 273 S.C. 194, 255 S.E. (2d) 799 (1979).

In conclusion, we reverse appellant's convictions because of the trial judge's erroneous ruling on the *Batson* issue and remand the case for a new trial.

Reversed and remanded.

HARWELL, CHANDLER, FINNEY and TOAL, JJ., concur.