23784

The STATE, Respondent v. Jonathan Dale SIMMONS, Appellant.

(427 S.E. (2d) 175)

Supreme Court

*David I. Bruck,* and *M. Anne Pearce,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard Oct. 13, 1992; Decided Feb. 1, 1993.

Reh. Den. March 10, 1993.

MOORE, Justice:

Appellant was convicted of murder, first-degree burglary, and petit larceny. He was sentenced to death, a consecutive life term, and thirty days. We affirm.

## FACTS

On July 17, 1990, the victim, Josie Lamb, was found dead in the bathroom of her home in the Olympia area of Columbia. Her skull had been crushed by an assailant who used the toilet tank lid to beat her on the head. Ms. Lamb was seventy-nine years old.

Appellant's fingerprint was found on the commode lid and his bloody fingerprint on the floor. He was arrested the next day and confessed to killing Ms. Lamb. He stated he went to her house "to see a white male named Jimmy, redheaded, he owed me 50 dollars." He has been to Ms. Lamb's house and asked for Jimmy the previous week but when he touched the door handle Ms. Lamb screamed and he fled. On the night of the murder, he entered the home and heard her scream. After looking around to be sure no one else was present, appellant went into the bathroom and struck Ms. Lamb twice on the head with the commode lid. At some point he unplugged the telephone. He took a nightgown from a bedroom and fled.

At the guilt phase of trial, counsel conceded that appellant had in fact murdered Ms. Lamb and had taken the nightgown. Appellant's defense focused on the State's failure to prove

first-degree burglary which was the only statutory aggravating circumstance alleged in this case. He contended there was no evidence he intended to commit a crime at the time he entered Ms. Lamb's house since, as stated in his confession, he had gone there intending only to look for "Jimmy."

In response to appellant's trial strategy, the State was allowed to introduce under *State v. Lyle*, 125 S:C. 406, 118 S.E. 803 (1923), evidence of appellant's confessions to other crimes against three elderly female victims.

## ISSUES

1. Whether the *Lyle* evidence was properly admitted?
2. Whether appellant was entitled to a penalty phase charge regarding his parole ineligibility?
3. Whether a charge regarding general deterrence should have been given?
4. Whether a charge describing each asserted nonstatutory mitigating circumstance should have been given?

## DISCUSSION

### GUILT PHASE

S.C. Code Ann. § 16-11-311(A) (Supp. 1991) requires the State to prove as one element of first-degree burglary that the defendant "entered a dwelling without consent and with intent to commit a crime therein." While such an intent is inferable from the defendant's conduct in the absence of other proof, *State v. Haney*, 257 S.C. 89, 184 S.E. (2d) 344 (1971), here the issue of intent was joined by evidence appellant had no intent to commit a crime when he entered Ms. Lamb's house. To prove intent, the Solicitor introduced the following three confessions given by appellant shortly after his arrest for Ms. Lamb's murder:

1. *Faris v. Mims*
   Ms. Mims is an elderly woman who lived in the Olympia area of Columbia at the time she was assaulted. In May 1990, appellant approached the front door of Ms. Mims house and asked for directions. He then went to her back door and forced his way in. He sexually assaulted her while choking her with some

clothing around her neck. He stole $50 from the house. He admitted he chose the victim because he saw she was an "old lady."

2. *Marie Furtick*

Ms. Furtick was seventy-one years old at the time she was assaulted by appellant in her home in the South Congaree area. In August 1989, appellant went to Ms. Furtick's front door and threw water on her when she opened the door. He then raped her, beat her, and stole money.

3. *Estelle Simmons*

Ms. Simmons is appellant's grandmother. She was seventy-one years old and lived near Ms. Furtick when, in June 1990, appellant raped and beat her in her home. He unplugged her telephone and looked for money.

The State introduced other evidence that both Ms. Furtick and Ms. Simmons were very severely beaten about the head and face. Ms. Furtick was bitten on the breasts and buttocks. Although appellant's confessions indicate he took money from both Ms. Furtick and Ms. Simmons, the State's evidence indicates nothing of value was taken from either home.

Appellant argues that this evidence of other crimes should have been excluded because (1) these crimes were too dissimilar to the Lamb murder to be probative and (2) the prejudicial impact of this evidence was too great.

We find this evidence was properly admitted under *State v. Lyle* as evidence tending to establish intent. Clear and convincing evidence of other crimes that is logically relevant to prove intent is admissible under *State v. Lyle* if its probative value outweighs its undue prejudicial effect. *See State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364 (1990). Although Appellant asserts these other crimes are "too dissimilar" to be admitted under *State v. Lyle*, we find the evidence of other crimes is logically relevant to the issue of intent.

Evidence is relevant if it tends to make more or less probable some matter in issue upon which it directly or indirectly bears. *State v. Alexander*, 303 S.C. 377, 401 S.E. (2d) 146 (1991); *State v. Bell*, *supra*. The evidence of appellant's violence against elderly women, each of whom was alone

in her home at the time of the attack, makes more probable appellant's criminal intent when he entered Ms. Lamb's house since he already knew her to be an elderly woman. Although there was no sexual assault in Ms. Lamb's case, all of the previous sexual assaults were accompanied by terrific physical violence far beyond that needed to accomplish the sexual assault itself. Moreover, theft was not the overwhelming motivation in these prior cases. It is logical to conclude from the evidence that appellant was chiefly motivated in each case by an intent to violently injure an elderly woman. This evidence is therefore relevant to the issue of appellant's intent at the time he entered Ms. Lamb's home without her consent.

Further, we find the probative value of this evidence outweighs its undue prejudicial effect. The issue of intent was a contested one. *Cf. State v. Garner,* 304 S.C. 220, 403 S.E. (2d) 631 (1991) (prejudicial effect of evidence of other crimes outweighs its probative value when purpose for which it is admitted is not a contested issue). The fact that appellant's grandmother was one of several elderly women he violently injured is probative because it demonstrates that even her status as his grandmother did not negate his particular violent intent regarding elderly women.

We hold the evidence of other crimes was properly admitted under *State v. Lyle* as evidence tending to establish intent on the burglary charge in this case.

## SENTENCING PHASE

At the sentencing phase of trial, appellant requested a charge that if sentenced to life imprisonment, he would be ineligible for parole under S.C. Code Ann. § 24-21-640 (Supp. 1991).[1]

The trial Judge ruled that *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991), precluded any charge on parole eligibility or ineligibility. After the general sentencing charge was given, the jury posed a question to the judge: "Does the impo-

---

[1] Section 24-21-640 provides:

The Board [of Probation, Parole and Pardon] must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in § 16-1-60.

sition of a life sentence carry with it the possibility of parole?" The trial judge then gave the "plain meaning" charge required under *State v. Norris*, 285 S.C. 86, 328 S.E. (2d) 339 (1985), that the jury was not to consider "parole or parole eligibility" and the terms "life" and "death" are to be understood in their plain and ordinary meaning.

Appellant contends the trial judge erred in refusing his requested charge because *Torrence* did not settle this issue and failure to give the charge violates his due process and eighth amendment rights.

In *Torrence*, the defendant requested a charge that he would be ineligible for parole under § 24-21-640 since he was already serving a life sentence for a previous murder. The trial judge denied the request but offered to charge that under S.C. Code Ann. § 16-3-20 (Supp. 1991) the defendant would be eligible for parole only after twenty or thirty years depending upon whether an aggravating circumstance was found. This is the charge approved in *State v. Atkins*, 293 S.C. 294, 360 S.E. (2d) 302 (1987).

Justice Finney, writing for the majority, reversed Torrence's death sentence because "the trial judge committed prejudicial error in denying [his] request to charge based upon § 24-21-640." 305 S.C. at 54, 406 S.E. (2d) 315. Justice Chandler concurred in result noting that the *Atkins* charge given under § 16-3-20 was inaccurate in Torrence's case. He then overruled *Atkins* for a majority of the Court because (1) parole is not a proper consideration for a sentencing jury since it is not a mitigating circumstance and (2) practical problems may arise in the application of the parole statutes. Further, Justice Chandler's analysis relies on the proposition that the issue is solely a matter of state law under *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed. (2d) 1171 (1983).

We need not engage in an academic discussion whether *Torrence* applies to both parole eligibility and ineligibility since we conclude the *Norris* charge given in this case satisfies in substance appellant's request for a charge on parole ineligibility.

In *State v. Davis*, — S.C. —, 411 S.E. (2d) 220 (1991), we clarified that despite our ruling in *Torrence*, a defendant is still entitled, upon request, to a plain meaning charge under *State v. Atkins, supra.* Although the trial judge erroneously declined to give a plain meaning charge upon request in this

case, the error was cured when he properly followed *State v. Norris, supra,* in answering the jury's question regarding the possibility of parole as follows:

> You are instructed not to consider parole or parole eligibility in reaching your verdict. Do not consider parole or parole eligibility. That is not a proper issue for your consideration. The terms life imprisonment and death sentence are to be understood in their plain and ordinary meaning.

The test for sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean. *State v. Bell,* 305 S.C. 11, 406 S.E. (2d) 165 (1991); *State v. Patterson,* 299 S.C. 280, 384 S.E. (2d) 699 (1989). We conclude a reasonable juror would have understood from the charge given that life imprisonment indeed meant life without parole. We therefore find appellant's argument without merit.

Appellant further contends the trial judge erroneously denied his requested charge that the jury should disregard any alleged deterrent effect on others in deciding whether to impose life or death. The Solicitor, however, declined to argue general deterrence to the jury and specifically stated "all we are here to do is to deter [appellant]." Thus, general deterrence was never an issue presented to the jury. Moreover, we have previously held the refusal to give such a charge is not error. *State v. Patterson,* 285 S.C. 5, 327 S.E. (2d) 650 (1984).

Finally, appellant argues the trial judge erred in denying his request that a detailed list of twenty-seven nonstatutory mitigating circumstances be submitted to the jury. Appellant concedes this procedure is not required so long as the jury is instructed, as it was here, to consider "any nonstatutory mitigating circumstances." *State v. Linder,* 276 S.C. 304, 278 S.E. (2d) 335 (1981).

## PROPORTIONALITY REVIEW

We have conducted the sentence review required by S.C. Code Ann. § 16-3-25 (1985) and conclude the evidence supports the jury's finding of an aggravating circumstance. We find the death sentence was not arbitrarily imposed and is proportionate to the penalty in similar cases.

Affirmed.

HARWELL, C.J., TOAL, J., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. In my view, appellant was deprived of a fair trial by virtue of the erroneous admission of appellant's past crimes under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). Further, I dissent from the majority's holding that appellant was not entitled to a jury charge to the effect that he would be ineligible for parole if sentenced to life in prison. I would reverse appellant's conviction and remand for a new trial.

*Admission of Evidence Under State v. Lyle*

At trial, the State introduced appellant's confessions to three past crimes involving the assault of elderly women for the purpose of showing that he entered the victims dwelling with the intent to commit a crime therein. In doing so, the State sought to satisfy the intent requirement of first-degree burglary, S.C. Code Ann. § 16-11-311(A) (Supp. 1991). In my view, these past crimes do not meet the test of admissibility under *Lyle, supra,* inasmuch as they are factually dissimilar from the present case, or too remote in time, and in at least one instance, unduly prejudicial.

In order for evidence of other crimes to be admissible under the settled exceptions, the evidence must have "logical relevance to the particular excepted purpose for which it is sought to be introduced." *Lyle,* 118 S.E. at 807. Due to the very nature of such evidence and "the dangerous tendency and misleading probative force," its admission should be subject to rigid scrutiny by the courts. Should the court not clearly perceive logical relevance between the extraneous crime and the offense charged, the defendant should be given the benefit of the doubt and the evidence rejected. *Id.* See also *State v. Douglas,* 302 S.C. 508, 397 S.E. (2d) 98 (1990).

One prior incident on which evidence was admitted occurred more than one year prior to the offense for which appellant was on trial. I find this offense too remote in time to

reasonably establish that because appellant entered this prior victim's dwelling with intent to commit a crime, he did so in the present case, or that there was a common scheme or plan. *Lyle*, 118 S.E. at 808.

Even if the evidence of past crimes is deemed relevant, it may nonetheless be excluded if the danger of unfair prejudice outweighs its probative value. *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987).

The state was permitted to introduce evidence of appellant's assault of his grandmother. I would hold that the prejudicial effect of this most egregious evidence was substantially outweighed by any probative value which may have been deduced therefrom. *Johnson, supra.*

### Jury Charge On Parole Eligibility

Appellant contends the Circuit Court erred in declining to charge the jury that in the event he was sentenced to life in prison, he would be ineligible for parole under S.C. Code Ann. § 24-21-640. I agree.

Consistent with my opinion in *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991), I believe that appellant was entitled to a jury charge under § 24-21-640 since he "sought only to have the court declare correct and current law relevant to his case." *Id.* 406 S.E. (2d) at 320.