24392

The STATE, Respondent v. Luke A. WILLIAMS, III, Appellant.
(468 S.E. (2d) 626)

Supreme Court

329

*Daniel T. Stacey, Chief Attorney, South Carolina Office of Appellate Defense,* Columbia, *for Appellant.*

*Charles Molony Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Miller W. Shealy, Jr., Assistant Attorney General,* Columbia; and *Solicitor Donald V. Myers,* Lexington, *for Respondent.*

Heard Oct. 18, 1995.

Decided Mar. 18, 1996; Reh. Den. Apr. 18, 1996.

BURNETT, Justice:

In this death penalty case, Appellant Luke A. Williams (Williams) was convicted of murdering his wife and twelve-year-old adopted son. We affirm.

## FACTS

At approximately 11:00 a.m. on Wednesday, June 19, 1991, the bodies of Linda Williams (Wife) and Shawn Williams (Son) were discovered inside the family van in a forest in Edgefield County, South Carolina, approximately six miles from their home near Augusta, Georgia. The front bumper of the van was against a tree, and fire had partially damaged the vehicle. The investigators detected a strong odor of gasoline and found several metal cans containing gasoline inside the van. Wife was discovered in the driver's seat, which was positioned so far back that her feet could not reach the pedals, and Son was seated in the front passenger seat. Blood was found on a piece of PVC pipe on the van's floorboard. Wife was dressed in a gray t-shirt, gray sweatpants pulled down to her upper thigh, light pink socks, nylon panties, and she was not wearing a bra or shoes. Son was also shoeless and was wearing a t-shirt and sweatpants.

Wife suffered a black eye, a contusion on the bridge of her nose, contusions on her left forearm, and abrasions on her left shoulder. These injuries were consistent with having been caused by a human fist. The autopsy revealed that Wife's cause of death was blunt head trauma due to a beating. Son suffered a bruise to his forehead, as well as abrasions to his chin, back, and right side of his neck. His cause of death was asphyxiation due to manual strangulation. Wounds created by

the fire were postmortem. Although the deaths occurred within the same time frame, a specific time of death was not determined.

At trial, several friends of Wife testified that she always dressed neatly and would not go out in public dressed in a t-shirt without a bra. Additionally, they stated that because Wife was short in stature, she always positioned the driver's seat of the van close to the steering wheel. One friend stated that she last spoke with Wife by telephone at 2:50 p.m. on June 18, 1991. A neighbor testified that on June 19, 1991, a car drove into the driveway of Williams' home between 1:00 and 2:00 a.m. Further testimony established that at approximately 7:00 a.m. on June 19, 1991, Wife's van was not parked in the driveway.

A bath towel and Son's tennis shoes with blood stains on them were found at Williams' home. In addition, Williams' right hand was severely bruised and swollen—this injury was consistent with having occurred on June 19th. Williams told a friend that on the day of the homicides, Wife and Son were planning to go shopping at Columbia Mall in Columbia, South Carolina. Prior to receiving the autopsy results, Williams informed the friend that Wife had been beaten to death, and Son had been strangled with a plastic wire wrap similar to wire wrap Son had in his bedroom. When asked if he killed Wife and Son, Williams did not respond.

Williams and Wife were experiencing significant marital and financial difficulties. Neighbors and friends stated that they frequently overheard Williams and Wife engaging in hostile arguments. One neighbor testified that she heard a "loud thump" during one of the arguments. In addition, Williams and Wife had declared bankruptcy, and foreclosure proceedings had been initiated against their home.

Williams had substantially increased life insurance benefits on Wife and Son during May of 1991, designating himself as beneficiary. On May 7, 1991, Williams upgraded existing policies with Allstate Insurance Company to include auto-related death benefits in the amounts of $100,000 for Wife and $20,000 for Son. Williams forged Wife's name on the enrollment form. After their deaths, Williams made claims under two Allstate policies in the amounts of $200,000 on Wife and $45,000 on Son. Williams also took out new life insurance policies for Wife

and Son with State Farm Insurance Company effective May 30, 1991, providing Wife with death benefit insurance in the amount of $250,000 and Son with $25,000 in death benefit insurance.[1] Williams indicated on the claims forms that Wife and Son had died in Edgefield County, South Carolina.

At the conclusion of the State's case, counsel for Williams moved for a directed verdict maintaining that there was insufficient evidence linking Williams to the murders, that venue in Edgefield County was not established, and that the circuit court lacked subject matter and personal jurisdiction. The motions were denied, after which Williams waived his right to testify and present a final argument. The jury found Williams guilty of murder. He was sentenced to death after the jury determined the existence of two statutory aggravating circumstances: (1) Williams committed the murders to receive money or a thing of monetary value; and (2) two or more persons were murdered.

## DISCUSSION

### I. *Denial of the Motion for a Directed Verdict Based upon Lack of Evidence*

Williams contends the trial court erred in refusing to direct a verdict in his favor because the evidence failed to link him to the homicides. We disagree.

The trial court has a duty to submit the case to the jury where the evidence is circumstantial if there is *any* substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Williams*, 303 S.C. 274, 400 S.E. (2d) 131 (1991); *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989). In ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not with its weight. *State v. Edwards, supra*. When this Court reviews the denial of a motion for a directed verdict, it views the evidence in the light most favorable to the nonmoving party, and if there is *any* direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the ac-

---

[1] Williams applied for $500,000 in death benefit insurance for Wife; however, until the policy was approved, a binder limited the amount of coverage to $250,000.

cused, refusal by the trial judge to direct a verdict is not error. *State v. Stokes*, 299 S.C. 483, 386 S.E. (2d) 241 (1989); *State v. Edwards, supra; State v. Irvin*, 270 S.C. 539, 243 S.E. (2d) 195 (1978).

The record provides evidence from which Williams' guilt could fairly and logically be deduced: (1) Williams and Wife were having severe marital as well as financial difficulties; (2) Williams substantially increased life insurance benefits for Wife and Son during the month prior to the homicides and made himself the beneficiary, and the resulting death benefits would remedy Williams' poor financial situation; and (3) Williams forged Wife's name to insurance forms; (4) no motive for robbery was established, and it appeared from the way the victims were dressed and placed in the van that they had been forced from their home suddenly; (5) shortly after the homicides, Williams did not deny killing Wife and Son; (6) Williams knew details about the homicide prior to receiving results from the autopsy reports; (7) Williams' hand was injured and Wife's injuries were consistent with having been caused by a human fist; and (8) a towel and shoes were found at Williams' residence on which human blood was discovered. Accordingly, we conclude there was sufficient evidence to submit this matter to the jury.

## II. *Denial of the Motion for a Directed Verdict with Respect to Venue and Jurisdiction*

Williams asserts he was entitled to a directed verdict because there was insufficient evidence to establish that the homicides occurred in Edgefield County, South Carolina. Therefore, he maintains that Edgefield County was without venue, and the circuit court lacked jurisdiction over him. We disagree.

A criminal defendant is entitled to a directed verdict when the State fails to present evidence that the offense was committed in the county alleged in the indictment. *State v. Evans*, 307 S.C. 477, 415 S.E. (2d) 816 (1992); *State v. McCoy*, 98 S.C. 133, 82 S.E. 280 (1914). For the purpose of establishing jurisdiction in a criminal prosecution, it is not necessary that the county in which the crime was committed be proved affirmatively if there is sufficient evidence from which it can be inferred. *State v. McLeod*, 303 S.C. 420, 401 S.E. (2d) 175 (1991); *State v. Wharton*, 263 S.C. 437,

211 S.E. (2d) 237 (1975); *State v. Henderson*, 285 S.C. 320, 329 S.E. (2d) 448 (Ct. App. 1985). Moreover, venue, like jurisdiction, in a criminal case need not be affirmatively proved, and circumstantial evidence of venue, though slight, is sufficient to establish jurisdiction. *State v. Owens*, 293 S.C. 161, 359 S.E. (2d) 275 (1987); *Wray v. State*, 288 S.C. 474, 343 S.E. (2d) 617 (1986); *State v. Wharton, supra.* Generally, it can be inferred that the crime was committed in the state as well as county where the body is found. *United States v. Rees*, 193 F. Supp. 849 (D. Md. 1961). Furthermore, where some acts material to the offense, and requisite to its consummation, occur in one county, and some in another, venue is proper in either county. *State v. McLeod, supra; State v. Gasque*, 241 S.C. 316, 128 S.E. (2d) 154 (1962).

Although there is evidence that some of the acts material to the homicides may have been committed in Georgia, the deaths occurred sometime between the time the victims were last seen in Georgia and the time the fire started in the van in South Carolina. Because both bodies were found in Edgefield County, we conclude there was sufficient evidence from which a trier of fact could reasonably infer that the victims died there. Moreover, Williams signed insurance documents conceding that Wife and Son died in Edgefield County. Accordingly, we find that there was sufficient circumstantial evidence, although not conclusive, to support the inference that the victims died in Edgefield County, South Carolina, and Williams was not entitled to a directed verdict.

### III. *Proffer of Evidence*

At trial, Williams proffered evidence that there were marijuana manufacturers in the area where the bodies were found who had subsequently threatened the lives of a confidential informant and a narcotics agent. Williams maintains that because these men had the motive and opportunity to kill the victims, the circuit court erred in refusing to allow him to introduce this evidence to create a reasonable doubt of his guilt. We disagree.

We have held that:

> [E]vidence offered by accused as to the commission of the crime by another person must be limited to such facts as

are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose. An orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial does not contemplate that such defendant be permitted, by way of defense, to indulge in the conjectural inferences that some other person might have committed the offense for which he is on trial, or by financial analogy to say to the jury that someone other than he is more probably guilty.

*State v. Gregory,* 198 S.C. 98, 104-05, 16 S.E. (2d) 532, 534-35 (1941). *See also State v. Southerland,* 316 S.C. 377, 447 S.E. (2d) 862 (1994); *State v. Parker,* 294 S.C. 465, 366 S.E. (2d) 10 (1988).

After reviewing the record, we conclude that the evidence offered by Williams failed to establish that the persons arrested for growing marijuana had *any* connection whatsoever to the homicides. Hence, the drug offenses were isolated from the homicides, and evidence pertaining to them should not have been admitted to insinuate that someone other than Williams could have murdered the victims. Accordingly, because Williams failed to show that the proferred evidence was inconsistent with his guilt, the circuit court exercised sound discretion in excluding it.

### IV. *Admission of Evidence of Marital Discord*

Williams maintains that he is entitled to a new trial because the details about prior marital difficulties should not have been admitted. He specifically asserts that testimony referring to a telephone conversation he had with Wife concerning a bill was prejudicial and inadmissible. In addition, he contends that the following colloquy between the Solicitor and a witness and the Solicitor's subsequent refer-

ences to it prejudiced his case:

> A. Well, one time I heard a loud thump but I didn't know what it was.
> Q. What do you mean by a loud thump?
> A. Like something was knocked over.
> Q. Coming from inside the house?
> A. From inside the house.
> Q. Now would this be during the daylight hours or night-time or what?
> A. This was during the day. Well, it wasn't real late. It was somewhere between 5 o'clock in the evenin' time.
> Q. A loud thump noise.

In homicide cases, although evidence of previous quarrels and ill feelings or hostile acts between parties is admissible to show that animus probably existed between the parties at the time of the homicide, the details of the difficulties should be excluded. *State v. Clinkscales*, 231 S.C. 650, 99 S.E. (2d) 663 (1957) (details relating that husband had previously shot his wife in the back with a shotgun were held to be inadmissible).

The evidence presented did not detail the problems of the marriage, but merely established that there was animus between Williams and Wife. Although references to loud altercations and controversial telephone conversations between the couple established that their relationship was strained, specific details of the marital disputes were not revealed. Furthermore, references to the fact that "something" was knocked over inside the house does not qualify as a detailed description of a marital problem. Accordingly, we find no error in the admission of this evidence.

### V. *Refusal of the Request to Charge*

Williams argues that the circuit court neither charged the jury on parole minimums nor did it charge the jury that the term life imprisonment was to be understood in its ordinary and plain meaning.

Williams first contends that the circuit court violated the Eighth and Fourteenth Amendments in refusing to instruct the jury that if they sentenced him to life without an aggravating circumstance, he would serve a minimum of twenty years without parole, and if they found an aggravating cir-

cumstance, he would serve a minimum of thirty years without parole.

Under the Eighth Amendment,[2] States cannot limit the sentencer's consideration of any *relevant* circumstance which could cause the jury to decline to impose the death penalty. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed. (2d) 720 (1991); *State v. Stewart,* 288 S.C. 232, 341 S.E. (2d) 789 (1986). The United States Supreme Court has "deferred to the State's choice of substantive factors relevant to the penalty determination." *California v. Ramos,* 463 U.S. 992, 1001, 103 S.Ct. 3446, 3453, 77 L.Ed. (2d) 1171 (1983). Therefore, whether parole eligibility is *relevant* to the sentencing determination is a matter of state law. *Id.* We have determined parole eligibility is *not* relevant to a jury's sentencing considerations. *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991) (Chandler, A.J., concurring); *State v. Davis,* 306 S.C. 246, 411 S.E. (2d) 220 (1991). We therefore conclude that the Eighth Amendment was not violated.

Nevertheless, under the Fourteenth Amendment,[3] when the State places the defendant's future dangerousness at issue, and the only available alternative sentence to the death penalty is life imprisonment without parole, due process entitles the defendant to inform the jury that he is parole ineligible. *Simmons v. State,* — U.S. —, 114 S.Ct. 2187, 129 L.Ed. (2d) 133 (1994). However, *Simmons* is inapplicable in this case because the State did not rely upon Williams' future dangerousness as a justification for the jury to impose the death penalty. *See State v. Tucker,* 319 S.C. 425, 462 S.E. (2d) 263 (1995); *State v. Young,* 319 S.C. 33, 459 S.E. (2d) 84 (1995); *State v. Southerland, supra.*

Next, Williams contends the circuit court should have charged the jury that the term life imprisonment is to be understood in its ordinary and plain meaning. If a capital defendant requests it, a charge must be given at the sentencing phase that the life imprisonment means imprisonment for life. *State v. Davis, supra; State v. Atkins,* 293 S.C. 294, 360 S.E. (2d) 302 (1987). According to our review of the record, Williams did not request a plain meaning charge.

[2] U.S. CONST. amend. VIII.
[3] U.S. CONST. amend. XIV.

Moreover, because Williams failed to object to the trial judge's instructions, this issue is not preserved. *State v. Torrence, supra* (a contemporaneous objection must be made to preserve error).

## VI. *Admission of Photographs*

Williams asserts error in the admission during the sentencing phase of five close-up autopsy photographs of the victims. Three photos illustrated the wounds to Son's neck and face. The two other photos portrayed the wounds to Wife's forearm and injuries to her face and shoulder. Williams argues that the photos were admitted to inflame the passions of the jury. We disagree.

Photographs of the victim's body are admissible in the sentencing phase of a capital trial to show the circumstances of the crime and the character of the defendant. *State v. Kornahrens,* 290 S.C. 281, 350 S.E. (2d) 180 (1986). The trial judge must balance the prejudicial effect of the photographs against their probative value. However, the scope of the probative value is much broader during the sentencing phase. *Id.*

Although the admitted photographs were taken during the autopsy rather than at the scene, they are not unnecessarily gruesome. The photographs merely illustrate the nature of the bruises on the victims' bodies. Moreover, they depict the manner in which the homicides were committed, thus, corroborating testimony given during the sentencing phase. Accordingly, we find no error in their admission.

## VII. *Upholding of the Death Sentence*

Williams contends that when determining his guilt the jury relied on circumstantial evidence which was too unreliable to uphold a death sentence consonant with the Eighth Amendment. We disagree.

We have held that a conviction and sentence of death based upon circumstantial evidence is not improper. *State v. Owens, supra.* Furthermore, in several other cases, courts have determined that circumstantial evidence can be sufficient to sustain the imposition of capital punishment: *People v. Hawkins,* 10 Cal. 4th 920, 897 P. (2d) 574, 42 Cal. Rptr. (2d) 636 (1995) (imposition of death penalty for murder conviction based on

circumstantial evidence is not unconstitutional); *People v. Alcala*, 4 Cal. 4th 742, 842 P. (2d) 1192, 15 Cal. Rptr. (2d) 432 (1992), *cert. denied,* — U.S. —, 114 S.Ct. 215, 126 L.Ed. (2d) 171 (1993) (imposing the death penalty is not cruel and unusual punishment even though the conviction rests in part upon circumstantial evidence); *Boggess v. State*, 855 S.W. (2d) 656 (Tex. Crim. App. 1989), *vacated on other grounds*, 492 U.S. 915, 109 S.Ct. 3237, 106 L.Ed. (2d) 585 (1989), *on remand*, 855 S.W. (2d) 645 (Tex. Crim. App. 1991), *cert. denied,* — U.S. —, 113 S.Ct. 3034, 125 L.Ed. (2d) 721 (1993) (circumstantial evidence is sufficient to support defendant's sentence to death); *Nelson v. State*, 247 Ga. 172, 274 S.E. (2d) 317 (1981), *cert. denied,* 454 U.S. 882, 102 S.Ct. 365, 70 L.Ed. (2d) 192 (1981) (imposition of death penalty based upon circumstantial evidence is not unconstitutional).

As previously addressed, the following circumstantial evidence existed from which the jury could conclude that Williams had the motive, means, and opportunity to perform the homicides: Williams and Wife were having severe marital as well as financial difficulties; Williams substantially increased life insurance benefits for Wife and Son immediately prior to the homicides and made himself the beneficiary—the resulting death benefits would remedy Williams' poor financial situation; Williams forged Wife's name to insurance forms; no motive for robbery was established and it appeared that the victims had been forced from their home suddenly; shortly after the homicides, Williams did not deny killing Wife and Son; Williams knew details about the homicides prior to receiving results from the autopsy reports; Williams' hand was injured and Wife's injuries were consistent with having been caused by a human fist; and a towel and shoes on which human blood was found were discovered at Williams' residence.

While the State offered no evidence directly connecting Williams with the homicides, we find that the circumstantial evidence presented sufficiently supported Williams' conviction and the imposition of the death penalty. Accordingly, the Eighth Amendment was not violated.

## PROPORTIONALITY REVIEW

We have reviewed the record and conclude that the death

sentence was not a result of passion, prejudice, or other arbitrary factors and the evidence supports the jury's finding of the aggravating circumstances. S.C. Code Ann. § 16-3-25(C)(1)-(2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *State v. Tucker, supra; State v. Southerland, supra; State v. Owens, supra; State v. Kornahrens, supra.*

Accordingly, Williams' convictions and sentences are

Affirmed.

TOAL, A.C.J., MOORE and WALLER, JJ., and H. DEAN HALL, Acting Associate Justice, concur.