22264

The STATE, Respondent, v. John Foster NORRIS, Appellant.
(328 S. E. (2d) 339)

Supreme Court

*Asst. Appellate Defender Elizabeth C. Fullwood,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Carolyn M. Adams,* Columbia, and *Sol. George M. Ducworth* Anderson, *for respondent.*

Heard Sept. 10, 1984.

Decided March 25, 1985.

CHANDLER, Justice:

Appellant was found guilty of murder while in the commission of criminal sexual assault in the first degree (rape) and sentenced to death. We affirm the conviction, vacate the sentence and remand for resentencing.

## THE FACTS

At approximately 12:02 p.m., November 14, 1982, police officers found the severely beaten body of 75 year old Louise Davis beside a vacant house in Anderson, South Carolina. Her injuries included multiple fractures of facial bones, dislocation of the jawbone on both sides and down the midline, bruises and tears of the face and complete exposure of the left eyeball. Death resulted from asphyxiation due to the blocking of her airway by collapsing soft tissue following the fracture of her jawbone. According to the patholgist she had engaged in sexual intercourse anywhere from several hours to three days prior to death.

On November 14 police, acting upon information from a witness who saw him leave the Red Door Lounge with the victim at about 10:30 p.m. the previous evening, arrested Appellant at his parents' home.

After receiving *Miranda* rights Appellant voluntarily gave police items of clothing worn by him the evening of November 13, which were identified by the witness as those worn by Appellant when seen with the victim.

Appellant was again arrested and given *Miranda* warnings. He volunteered a statement admitting that he: severely beat the victim with his fists; had sex with her; stomped her in the face ten or twelve times; ate two hot dogs at a local grill, then went to his parents' home to watch TV and go to bed. He also admitted that, when he turned over clothing to police earlier that day, he withheld the shoes with which he stomped the victim. He had kept them in order to remove blood stains.

At trial, however, Appellant claimed the victim consented, and he offered a different version of what took place, testifying that the victim had solicited sex from him for $5.00; he took the victim to the vacant lot where she submitted voluntarily to intercourse; the victim cursed him when he told her he did not have the $5.00; he became angry, "lost his head," and began hitting and kicking her; he was provoked into beating the victim but had no intention to kill her.

The jury found Appellant guilty of murder while in the commission of rape. In Phase II the jury recommended the death penalty, upon the two aggravating circumstances of rape and a prior conviction for murder.

Appellant contends numerous errors were committed during the (1) jury selection, (2) guilt and (3) sentencing phases of the trial, and (4) in the denial of a motion after trial.

## I. JURY SELECTION

First, Appellant contends that failure of his trial counsel to conduct an oral *voir dire* examination of prospective jurors deprived him of his Sixth and Fourteenth Amendment rights and, further, that failure of the trial judge to require his counsel to engage in such examination was a violation of S. C. Code Ann. § 16-3-20(D) (1976 & Supp. 1983).

Three weeks prior to trial the Honorable William H. Ballenger granted a request of Appellant's counsel to submit a detailed questionnaire to all prospective jurors.

At pre-trial the Court took under advisement a motion by Appellant that the State be denied the right to conduct individual *voir dire* examination or, in the alternative, a proposal by Appellant that neither party conduct such examination.

When the case was called, the Court made a general qualification of the entire jury panel. Thereafter, in answer to inquiry by the Court, counsel of both the State and Appellant advised that they had no further requests regarding *voir dire*. Peremptory challenges where then exercised.

Appellant now assigns as error that which he proposed at pre-trial. In effect, he now contends the Court erred in permitting his trial counsel to knowingly waive individual *voir dire*. We disagree.

S. C. Code Ann. § 16-3-20(D) (1976 & Supp. 1983) provides that "any person called as a juror shall be examined by the attorney for the defense." This provision grants to a capital defendant the *right* for such examination but does not mandate its exercise. It may be waived. "The evident purpose of Section 16-3-20(D) is to secure to counsel for the defense in death cases the *right* to also question jurors during the *voir dire* examination." (Emphasis supplied.) *State v. Smart*, 274 S. C. 303, 305, 262 S. E. (2d) 911, 912 (1980).

Appellant next contends the trial judge in excusing certain jurors, violated S. C. Code Ann. § 14-7-890 (1976 & Supp. 1983). This section provides that jurors shall be excused only for good cause shown. Determination of good cause is for the trial judge, and we find from a review of the record no abuse in the exercise of his discretion.

Further, Appellant fails to meet his burden to show that actual prejudice resulted from the excusals. *DeLee v. Knight*, 266 S. C. 103, 221 S. E. (2d) 844 (1975), cert. den. 426 U. S. 939, 96 S. Ct. 2658, 49 L. Ed. (2d) 392 (1976); *State v. Rogers*, 263 S. C. 373, 210 S. E. (2d) 604 (1974).

## II. GUILT PHASE

Appellant contends the jury instructions on malice constituted reversible error; specifically, that the charge on felony-murder relieved the State of proving malice aforethought. We disagree.

In the original charge the jury was instructed:

> The law also allows the jury *to infer* malice if you conclude that the homicide was a proximate, direct result of the commission of a felony. And for that regard, criminal sexual conduct in the first degree would be a felony under our law. *You can imply* that malice existed if a person is in the commission of a felony at the time of the fatal blow. [Emphasis supplied.]

After deliberating for one hour the jury asked the Court "whether or not death during the commission of an act of a felony does that constitute malice."

In his supplemental instruction the trial judge defined the felony-murder rule but distinguished it from the law of South Carolina in the following language:

> But, for it to be murder it has to be committed with malice aforethought and that's where you look at all the facts and circumstances. *If it was during the commission of a felony you can consider that as facts and circumstances from which malice can be inferred. You don't have to infer it, but you can.*
> [Emphasis supplied.]

In both instructions it was made clear that malice would not be presumed from the commission of a felony, only that it *could* be inferred by the jury. The charge could not reasonably have been understood by the jury as shifting the burden of proof to Appellant to disprove malice or the implication of malice.

When reviewed for error, a jury charge must be considered as a whole. *State v. Thompson,* 278 S. C. 1, 292 S. E. (2d) 581 (1982); *State v. Hyman,* 276 S. C. 559, 281 S. E. (2d) 209 (1981); *State v. Tucker,* 273 S. C. 736, 259 S. E. (2d) 414 (1979).

While we find no error in the trial judge's comment upon the felony-murder rule, we take this opportunity to remind Bench and Bar that South Carolina follows the common law rule of murder and makes no distinction between murder and felony-murder. *State v. Yates,* 280 S. C. 29, 310 S. E. (2d) 805 (1982); *State v. Thompson, supra, State v. Judge,* 208 S. C. 497, 38 S. E. (2d) 715 (1946). A proper charge on implied malice is:

> The law says if one intentionally kills another during the commission of a felony, the implication of malice may arise. If facts are proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive.

*See, State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781 (1983) (suggested charge on implied malice from use of a deadly weapon).

Appellant next contends that the trial judge's instruction on voluntary manslaughter constitutes reversible error. We disagree.

The charge included the following: Thus, manslaughter is the felonious killing of a human being without malice in sudden heat of passion on sufficient legal provocation. *If malice exists, the killing with malice would be murder even though done in the heat of passion.* [Emphasis supplied.]

Appellant's contention is that the last sentence from this portion of the charge mistates the law of voluntary manslaughter. While the last sentence was not essential, no error resulted from it's inclusion. The trial judge instructed that heat of passion and malice are mutually exclusive:

> In determining whether an act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions must be taken into consideration including the conditions connected with the tragedy as well as those existing at the time of the killing.

When the charge on voluntary manslaughter is considered as a whole, it correctly states the law of South Carolina. *State v. Daniels*, 231 S. C. 176, 97 S. E. (2d) 902 (1957); *State v. Adams*, 279 S. C. 228, 306 S. E. (2d) 208 (1983).

### III. SENTENCING PHASE

Appellant assigns numerous errors in the sentencing phase of his trial.

First, he argues that the trial judge erred in requiring him to elect between testifying as a witness *or* making a closing statement to the jury. He contends his due process right to present a defense includes the right to both testify *and* make a closing statement. We agree.

In the sentencing phase of the trial the following colloquy occurred:

> COURT: Do you have further witnesses?
> WHITEN: John Norris would make a statement.
> COURT: He has that right. But you want him to do it now or at the close of the case after the solicitor argues?
> WHITEN: Both times.
> COURT: *You can't do it both times. He's going to have to take the stand and testify as a regular witness, or else he can make a closing statement. I don't think he can do both.* [Emphasis supplied.]

S. C. Code Ann. § 16-3-20(B) (1976 & Supp. 1983) provides that "(t)he State, the defendant and his counsel shall be permitted to present arguments for or against the sentence of

death. The defendant and his counsel shall have the closing argument regarding the sentence imposed."

Nothing in § 16-3-20(B) can be interpreted as denying to a capital defendant the right to testify in the event he chooses to also make a closing statement. Appellant, if he chose, was entitled to both testify and make a closing statement. The trial Court's ruling constitutes reversible error.

Next, Appellant argues that the trial judge's supplemental instruction on parole eligibility was erroneous. We agree.

After deliberating for two hours in the sentencing phase the jury asked the Court whether Appellant would be eligible for parole should he be sentenced to life imprisonment.

The Court then charged in part:

> You will recall in Section 16-3-20 says that a person who is convicted of or pleads guilty to murder shall be punished by death or by imprisonment for life. That law goes on to say *and I don't charge this to the jury unless they make inquiry because it leads to speculation which I don't think the jury should engage in,* but it says: And shall not be eligible for parole until the service of twenty years notwithstanding any other provision of law.
> So, in a capital case if you recommend life, or in the matter in any murder case, if the defendant is sentenced to life, he shall not be eligible for parole until the service of twenty years. [Emphasis supplied.]

This instruction violates the restriction on reference to parole eligibility upon a conviction. The proper response to such inquiries from trial judge has been clearly enunciated in recent decisions of this Court. *State v. Brooks,* 271 S. C. 355, 247 S. E. (2d) 436 (1978); *State v. Butler,* 277 S. Ct. 543, 290 S. E. (2d) 420 (1982); *State v. Copeland,* 278 S. C. 572, 300 S. E. (2d) 63 (1982).

In *Brooks* we stated:

> We are of the view appellant was entitled to have his guilt or innocence determined without regard to his eligibility for parole. A jury should be neither invited nor *permitted* to speculate upon the possible effects of parole upon a conviction. [Emphasis supplied.]

*Id.,* 271 S. C. 355, 359, 247 S. E. (2d) 436 (1978).

Here, the trial judge himself recognized the speculative nature of parole eligibility. His admonition, further in the charge, that the jury "should not speculate on whether or not this defendant would or would not make parole" could not cure the potential prejudice. *State v. Huiett,* 271 S. C. 205, 246 S. E. (2d) 862 (1978).

In the recent case of *State v. Plath,* 281 S. C. 1, 313 S. E. (2d) 619 (1984), this Court held the matter of parole eligibility to be a legislative determination.

> In the sentencing phase of a capital case, the jury shall understand the terms 'life imprisonment' and 'death sentence' in their ordinary and plain meaning without elaboration. [T]he function of the jury is not to legislate a plan of punishment, but to make the 'either/or' selection called for by the language of 16-3-20(A). . . .

*Plath,* 281 S. C. 1, 14, 313 S. E. (2d) 619 (1984).

When the issue is raised, the Court should instruct the jury that it shall not consider parole eligibility in reaching its decision, and that the terms "life imprisonment" and "death sentence" should be understood in their ordinary and plain meaning, *Plath, supra.*

Appellant next contends that his prior conviction in Virginia for second degree homicide did not qualify as an aggravating circumstance pursuant to S. C. Code Ann. § 16-3-20(C)(a)(2) (1976 & Supp. 1982), and should not have been submitted to the jury. We agree.

The State submitted as statutory aggravating circumstances (1) Appellant's second degree murder conviction in Virginia and, (2) murder committed while in the commission of rape. Appellant does not challenge the circumstance of rape.

The statutory aggravating circumstance of a prior conviction of murder can only apply to "murder" as defined in South Carolina law. Murder is the unlawful killing of any person *with malice aforethought.* The critical element of malice aforethought is absent from the crime of second degree murder in Virginia.

A review of Virginia statute and case law [*See* Va. Code § 18.2-32 (1982) and *Epperly v. Commonwealth,* 224 Va. 214,

294 S. E. (2d) 882 (1982)] indicates that the crime of second degree murder falls between the South Carolina crimes of manslaughter and murder.

In a capital case the language of the statute should be construed strictly. Second degree murder in Virginia does not equate with murder in South Carolina, and should not have been submitted to the jury as a statutory aggravating circumstance.

In light of this ruling, it is not necessary to address remaining issues concerning the Virginia conviction.

### IV. POST TRIAL MOTION

Appellant's final contention is that the trial judge erred in denying his motion for new trial on the grounds of after-discovered evidence. We disagree.

Appellant's motion was made after the jury recommendation of death but prior to sentencing by the Court. His counsel advised the Court that he had received a telephone call from an unidentified person who would testify to specific instances of solicitation of sex by the victim.

From a review of the record, we find the trial judge was correct in holding that Appellant failed to meet the criteria for granting a new trial on after-discovered evidence. In particular, Appellant failed to establish that the evidence could not have been discovered before trial by exercise of due diligence, or that it was not merely cumulative or impeaching.

From the evidence introduced at trial it is clear that the victim's reputation was well known in the area. Moreover, a witness for Appellant testified that the victim routinely solicited sex.

Appellant clearly failed to meet the criteria for a new trial on after-discovered evidence and his motion, therefore, was properly denied.

We examined the entire record for other error and have found none.

Accordingly, we affirm Appellant's conviction, reverse the death sentence, and remand for resentencing.

Affirmed in part; reversed in part; and remanded.

LITTLEJOHN, C. J., and NESS, GREGORY· and HARWELL, JJ., concur.