298 S.C. 482 (1989)
381 S.E.2d 724
The STATE, Respondent
v.
Andrew Lavern SMITH, Appellant.
23016
Supreme Court of South Carolina.
Heard September 19, 1988.
Decided May 30, 1989.
*483 John H. Blume, David I. Bruck, both of Bruck & Blume, Columbia, Robert Gamble, Steven M. Krause, Anderson, and S.C. Office of Appellate Defense, Columbia, for appellant.
Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., and Norman Mark Rapport, Columbia, and Sol. George M. Ducworth, Anderson, for respondent.
Heard Sept. 19, 1988.
Decided May 30, 1989.
HARWELL, Justice:
*484 Appellant Andrew Lavern Smith (Smith) was convicted of murdering an elderly couple and sentenced to death. His convictions and sentence were subsequently affirmed by this court. State v. Smith, 286 S.C. 406, 334 S.E. (2d) 277 (1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1239, 89 L.Ed. (2d) 347 (1986). Upon application for post-conviction relief, the circuit court vacated the death penalties and ordered a new sentencing proceeding pursuant to the United States Supreme Court's decision in Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed. (2d) 1 (1986).
Smith was again sentenced to death. This case consolidates his direct appeal with the sentence review mandated by S.C. Code Ann. § 16-3-25 (1985). We affirm.

FACTS
On the afternoon of May 28, 1983, Smith, armed with a pistol, went to the home of Christy and Corrie Johnson, a couple in their eighties from whom Smith's family had previously rented a house.
In a confession given when arrested, Smith described what happened at the Johnsons':
I needed a ride and I wanted to see if Christy Johnson would let me borrow his car, so I walked up to his house and he wouldn't let me use the car. [We] got to arguing  I got mad and I hit Christy Johnson. He fell to the floor and Corrie, his wife, came at me with something. I don't know what.
I pushed her back. I reached for a knife and I stabbed her several times. Then I stabbed Christy Johnson several times after he got up off the floor. I then got the keys and went and got the car.
Smith later stripped and abandoned the car. He hid the pistol in a false ceiling at his place of employment.
Autopsies revealed that each of the victims had multiple stab wounds and also "blunt force" injuries, consistent with having been struck by the pistol, upon which human blood was found. Mr. Johnson had 26 and Mrs. Johnson 17 stab wounds, to the face, neck, chest and back. Both had "defense wounds" on their wrists and hands indicating that, while conscious, they tried to defend themselves.
*485 According to Dr. Joel Sexton, the pathologist who conducted the autopsies, all wounds were inflicted before death. Considering the number of superficial wounds, it was his opinion that many were "most probably" inflicted while the victims were conscious. This fact was supported by the number and location of blood smears and pools of blood throughout the house. Many of the wounds, particularly those to the face and hands, would have been painful.

DISCUSSION

I. Statutory Aggravating Circumstance

Smith first asserts that there was insufficient evidence to support the trial judge's charge to the jury on the statutory aggravating circumstance of physical torture, S.C. Code Ann. § 16-3-20(C)(a)(1)(g) (Supp. 1987). We disagree.
In determining whether to submit an aggravating circumstance to the jury, the trial court is concerned only with the existence of evidence, not its weight. The aggravating circumstance is properly submitted if supported by any direct or circumstantial evidence. State v. Butler, 277 S.C. 452, 290 S.E. (2d) 1 (1982).
Physical torture occurs when the victim is intentionally subjected to serious physical abuse prior to death. State v. Elmore, 279 S.C. 417, 308 S.E. (2d) 781 (1983). The pathologist's testimony and the physical evidence of record here abundantly support the physical torture charge.
Smith next argues that, as defined in the trial judge's charge, the statutory aggravating circumstance of physical torture is so broad as to violate the Eighth Amendment.
The construction and application of an aggravating circumstance is unconstitutionally broad or vague if it does not channel or limit the jury's discretion in imposing the death penalty. Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 100 L.Ed. (2d) 372 (1988); Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed. (2d) 398 (1980). The court's charge here, taken from State v. Elmore, supra, defined physical torture as follows:
Physical torture is the intentional infliction of serious, vile, horrible, or inhuman abuse upon the body of another before death. The instantaneous death of the victim *486 does not constitute torture. Physical torture may include the malicious infliction of bodily harm to another by depriving him or her of a member of his or her body or by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member of his or her body, or the intentional and unmerciful prolonging of severe pain and abuse to the body of another, or the intentional unmerciful infliction of serious and extensive physical pain and abuse to the body of another.
This charge complies with the "channeling" requirement of the Eighth Amendment.

II. Solicitor's Closing Comments

Smith contends the solicitor's summation was improper in two respects.
First, he alleges the solicitor made several improper references to the victims' good character, in violation of the United States Supreme Court's decisions in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed. (2d) 440 (1987), and this Court's decisions in State v. Gathers, 295 S.C. 476, 369 S.E. (2d) 140 (1988) and State v. Reed, 293 S.C. 515, 362 S.E. (2d) 13 (1987). Second, he contends the solicitor improperly disparaged his exercise of the right to counsel and to a jury trial.
This exception is meritless; neither of the solicitor's arguments rose to a level mandating reversal. We again admonish solicitors, however, to focus their arguments upon the characteristics of the defendant and the circumstances of the crime.

III. Ex Post Facto Waiver

Smith requested that the trial judge charge the jury on the thirty year parole eligibility provision of the Omnibus Criminal Justice Improvements Act, Act. No. 462, 1986 S.C. Acts 2955. Because the Act was enacted subsequent to the murders involved, the trial court refused to apply it retroactively.
Smith contends he should have been allowed to waive any protection afforded by the ex post facto clause of the United States Constitution in order that the jury might consider the increased time prior to parole eligibility as mitigating *487 evidence. We rejected this contention recently in State v. Matthews, 296 S.C. 379, 373 S.E. (2d) 587 (1988). Accordingly, the waiver request was properly denied.

IV. Supplemental Charge on Parole Eligibility

During its deliberations, the jury sent the court a note inquiring: "What does life in prison mean (the term specifically regarding parole)". Smith's trial counsel submitted that State v. Atkins, 293 S.C. 294, 360 S.E. (2d) 302 (1987), controlled and required the court to charge that "the term life imprisonment is to be understood in its ordinary and plain meaning." The trial judge gave this requested jury instruction twice.
State v. Norris, 285 S.C. 86, 328 S.E. (2d) 339 (1985), State v. Johnson, 293 S.C. 321, 360 S.E. (2d) 317 (1987), and State v. Plemmons, 296 S.C. 76, 370 S.E. (2d) 871 (1988) hold that a trial judge should respond to a parole eligibility question by instructing the jury: (1) not to consider parole; and (2) the terms "life imprisonment" and "death sentence" are to be understood in their plain and ordinary meanings. Smith argues that the trial judge's failure to instruct the jury "not to consider parole" here entitles him to another sentencing proceeding. We disagree.
The jury's question here reflected its desire to ascertain whether Smith, if sentenced to life imprisonment, could be paroled before his life ended. The judge instructed that "life imprisonment is to be understood in its ordinary and plain meaning." In its "ordinary and plain meaning," "life imprisonment" can mean only what it says  in prison for life. Being imprisoned for life and being paroled are mutually exclusive propositions. Thus, the only logical conclusion available to the reasonable juror from the court's instruction was that Smith would not be parole-eligible if sentenced to life in prison. To require reversal here based on the trial judge's failure to mechanically recite the Norris charge is to ignore the fact that a "life imprisonment in its ordinary and plain meaning" charge necessarily precludes jury consideration of parole eligibility.
Moreover, State v. Johnson and State v. Plemmons do not compel reversal. The "incomplete" instructions held to be reversible error in those cases are distinguishable from the instruction here.
*488 In Johnson, the trial court charged the jury that "the possibility of parole is of no concern of yours"; in Plemmons, the trial court instructed jurors that "you are not to concern yourself with that [parole]." Neither the Johnson jury nor the Plemmons jury was instructed, as was Smith's jury, that "life imprisonment" was to be understood in its ordinary and plain meaning.
The distinction is significant. The Johnson and Plemmons juries, instructed only that parole was not their concern, would have logically inferred that parole was someone else's concern. Simply put, those juries were practically invited to speculate about parole eligibility.
Smith's jury was afforded no such opportunity for speculation. The trial judge adequately instructed that parole was not a sentencing consideration. The jury received the guidance it sought, and Smith was not prejudiced by the charge. A contrary conclusion unnecessarily places form above substance.

V. Proportionality Review

We have conducted the review mandated by § 16-3-25 and conclude that the sentence is not arbitrary, excessive, or disproportionate and that the evidence supports the jury's finding of the statutory aggravating circumstance. See State v. Damon, 285 S.C. 125, 328 S.E. (2d) 628 (1985).
We have reviewed Smith's remaining exceptions, which were not argued in his brief, and dismiss them as meritless pursuant to Supreme Court Rule 23. See State v. Copeland, 278 S.C. 572, 300 S.E. (2d) 63 (1982) (continuance and change of venue); State v. Butler, 277 S.C. 452, 290 S.E. (2d) 1 (1982); State v. Copeland, supra (reasonable doubt); State v. Copeland, supra (unanimity of verdict); State v. Owens, 293 S.C. 161, 359 S.E. (2d) 275 (1987) (sympathy instruction).
Accordingly, Smith's death sentence is
Affirmed.
GREGORY, C.J., and TOAL, J., concur.
CHANDLER and FINNEY, JJ., dissenting in separate opinion.
CHANDLER, Justice (concurring and dissenting):
*489 I respectfully dissent from Part IV of the majority opinion, regarding the supplemental charge on parole eligibility. Inasmuch as the charge is not in compliance with that required by State v. Norris, 285 S.C. 86, 328 S.E. (2d) 339 (1985), I would reverse and remand for a new sentencing trial.
During its deliberations the jury directed this question in writing to the trial judge:
What does life in prison mean (the term specifically regarding parole)[?] [Emphasis supplied].
The judge responded with a supplemental instruction that "the term life imprisonment is to be understood in its ordinary and plain meaning." No reference whatsoever was made to "parole."
In Norris, we plainly spelled out the precise response to a death penalty jury's inquiry concerning parole eligibility:
When the issue is raised, the Court should instruct the jury that it shall not consider parole eligibility in reaching its decision, and that the terms `life imprisonment' and `death sentence' should be understood in their plain and ordinary meaning.... [Emphasis supplied].[1]
285 S.C. at 95, 328 S.E. (2d) at 344.
The Norris instruction is twofold, consisting of "parole" and "life imprisonment" prongs, each of which must be charged. We so held in State v. Johnson, 293 S.C. 321, 360 S.E. (2d) 317 (1987), and most recently in State v. Plemmons, 296 S.C. 76, 370 S.E. (2d) 871 (1988).
Here, the trial judge's instruction omitted the "parole" prong. The majority reasons that "the only logical conclusion available to the reasonable juror from the court's instruction was that Smith would not be parole-eligible if sentenced to life in prison." This defense of the partial Norris instruction overlooks the reality, known to "the reasonable *490 juror," that, historically, life-term defendants have been eligible for parole. Accordingly, it is critical that when a death penalty jury inquires concerning parole, the Norris charge be given, not in part, but in full.
The failure of the trial judge to instruct the jury on the "parole" prong is not a technical omission of mere form, as suggested by the majority; rather, it constitutes an error of substance mandating reversal.
FINNEY, J., concurs.
NOTES
[1] Our opinion in State v. Atkins, 293 S.C. 294, 360 S.E. (2d) 302 (1987) did not affect the Norris charge. The instruction made optional in Atkins is to be given in the principal charge. Atkins does not address the appropriate charge to be given when the jury inquires about parole.