505 S.E.2d 328

**The STATE, Respondent,**

v.

**Joseph Lee ARD, Appellant.**

No. 24840.

Supreme Court of South Carolina.

Heard May 27, 1998.

Decided Sept. 14, 1998.

Rehearing Denied Oct. 7, 1998.

---

Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Columbia; and Solicitor Donald V. Myers, Lexington, for respondent.

BURNETT, Justice:

Appellant was convicted of the murder of his girlfriend, Madalyn Coffey, and the murder of their unborn, but viable, son. He was sentenced to death.

## BACKGROUND

Ms. Coffey died from a single gunshot wound to her forehead. Her unborn but viable child survived in utero for

approximately six to eight minutes before dying from a lack of oxygen.

During the guilt phase of trial, witnesses testified they heard appellant threaten to kill Ms. Coffey prior to the shooting. A witness testified she saw appellant assault Ms. Coffey during her pregnancy and heard appellant state he wished Ms. Coffey and the unborn child were dead.

On the evening of the shooting, a witness testified she heard appellant and Ms. Coffey arguing in a motel bathroom. Appellant had a gun. Shortly thereafter, appellant shot Ms. Coffey. He told a friend, "tell them I did it and they will have to catch me." Appellant then left in his automobile. There were no eyewitnesses to the shooting.

Appellant testified Ms. Coffey's death was an accident. He claimed Ms. Coffey, who was 8½ months pregnant with his child, was upset and threatened to kill herself with the gun she was holding in her hand. During appellant's attempt to take the gun away from his girlfriend, the gun discharged. Appellant testified he thought his girlfriend was dead. He "freaked out" and fled to Atlanta. A friend informed appellant the police were looking for him. Three days later, appellant returned to Columbia and met with an attorney. Appellant testified he planned to surrender to the police but "blacked out" in the attorney's office. When he awoke, he was in the hospital. Ultimately, appellant was arrested for the two murders.

Appellant raises only sentencing issues on appeal.

## ISSUES

I. Did the trial court err in holding the terms "person" and "child" in S.C.Code Ann. § 16–3–20(C)(a) (Supp.1997) include a viable fetus?

II. Did the trial court err in admitting into evidence two photographs of the unborn child?

III. Did the trial court err by excluding from evidence a prior consistent statement made by appellant to his lawyer?

IV. Did the trial court err by instructing the jury not to consider parole eligibility in reaching a decision as to the proper sentence?

## DISCUSSION

### I.

■ Appellant argues the trial court erred in holding the terms "person" and "child" as used in the statutory aggravating circumstances found in § 16-3-20(C)(a)(9) & (10) include a viable fetus. Appellant contends the murder of a viable fetus should not make a defendant eligible for the death penalty. We disagree.

In *State v. Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984), the Court determined an unborn but viable fetus is a "person" within the statutory definition of murder.[1] The Court declared a murder conviction may be obtained when the state can prove beyond a reasonable doubt "the fetus involved was viable, i.e., able to live separate and apart from its mother without the aid of artificial support." *Id.* at 447, S.E.2d at 704.

In 1986, the General Assembly amended § 16-3-20(C)(a) to include subitems 9 and 10 as statutory aggravating circumstances. Act No. 462, 1986 S.C.Acts 2955. Subitem 9 provides: "Two or more *persons* were murdered by the defendant by one act or pursuant to one scheme or course of conduct." (emphasis added). Subitem 10 provides: "The murder of a *child* eleven years of age or under." (emphasis added). Neither "person" nor "child" are defined in the statute.

We conclude the legislature intended to include viable fetuses as "persons" within the statutory aggravating circumstance of § 16-3-20(C)(a)(9). At the time the General Assembly added subitem 9 to the list of statutory aggravating circumstances it was aware of our holding in *State v. Horne*, that a viable fetus was a person for purposes of murder.[2] *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997), *cert. denied*, —— U.S.

---

**1.** " 'Murder' is the killing of any *person* with malice aforethought, either express or implied." S.C.Code Ann. § 16-3-10 (1985) (emphasis added).

**2.** Moreover, the General Assembly was aware of our holdings in *Fowler v. Woodward*, 244 S.C. 608, 138 S.E.2d 42 (1964) (a viable fetus is a person capable of maintaining a wrongful death action), and *Hall v. Murphy*, 236 S.C. 257, 113 S.E.2d 790 (1960) (a viable fetus is a person who, if injured in utero, may maintain an action for those injuries after birth).

——, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998) (there is a basic presumption the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects); *Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993). We find it would be inconsistent to conclude a viable fetus is a person for purposes of murder, but not a person for purposes of a statutory aggravating circumstance to murder. Similarly, it would be absurd to hold a viable fetus is a "person" but not a "child." Consequently, we hold the legislature intended "child" within § 16–3–20(C)(a)(10) to encompass a viable fetus. The trial judge properly held the murder of a viable fetus could subject a defendant to the death penalty.

## II.

During the sentencing phase, the solicitor moved to introduce two photographs of the unborn child into evidence. These photographs show the unborn child dressed in clothes Ms. Coffey had intended for him to wear home from the hospital.[3] Appellant objected, arguing the photographs "give the impression that it was a born existing person" and the prejudice from the photographs outweighed any potential probative value. The solicitor responded the photographs were relevant to the two aggravating circumstances and relevant to establish the character of the defendant. The trial judge overruled appellant's objection, noting the photographs served to corroborate the pathologist's testimony on the unborn child's physical development.

On appeal, appellant asserts the photographs were not relevant to any issue at trial because the viability of the unborn child was not in dispute. We agree the viability of the unborn child was not an issue during the sentencing phase of appellant's trial. During the guilt phase instructions, the trial judge specifically charged the jury it must find the unborn child was viable. Having found appellant guilty of the unborn

---

3. Appellant does not claim the photographs are gruesome. He argues, however, the photographs depict the child lying in a casket and are nothing more than funeral mementos. We find the photographs do not suggest the child is lying in a casket. Accordingly, we express no opinion on the propriety of a photograph of a victim at his funeral.

child's murder, the jury had already concluded the unborn child was viable.

Nonetheless, we find the photographs were properly admitted. A trial judge has considerable latitude in ruling on the admissibility of evidence and his ruling will not be disturbed absent a showing of probable prejudice. The determination of the relevancy, materiality, and admissibility of a photograph is left to the sound discretion of the trial judge. *State v. Kornahrens,* 290 S.C. 281, 350 S.E.2d 180 (1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). The trial judge must balance the prejudicial effect of a photograph against its probative value. *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626, *cert. denied,* 519 U.S. ——, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996).

The purpose of the sentencing phase in a capital trial is to "direct the jury's attention to the specific circumstances of the crime and the characteristics of the offender." *State v. Matthews,* 296 S.C. 379, 390, 373 S.E.2d 587, 594 (1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). Photographs of the victim's body may be admitted to show the circumstances of the crime and the character of the defendant. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997). Photographs may be offered as evidence in extenuation, mitigation, or aggravation. *State v. Kornahrens, supra; see also State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357, *cert. denied,* 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995).

In addition, evidence about the victim is relevant to the jury's consideration of the sentence which should be imposed. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Photographs may be offered as victim impact evidence "to show something of the victim's life." "Victim impact evidence is clearly admissible because it shows the victim's uniqueness as an individual so long as it does not render the trial fundamentally unfair." *State v. Tucker, supra,* S.C. at 168, 478 S.E.2d at 267.

The two photographs were properly admitted to portray the individuality of the unborn child. Since the child was murdered before he was born, there was no other way to

vividly present his uniqueness to the jury. Additionally, the photographs aided the jury in determining the vulnerability of the infant victim and, therefore, were relevant in assessing the circumstances of the crime and the character of the defendant.

 Moreover, the photographs of the infant, dressed in clothes his mother intended for him to wear home from the hospital, reveal Ms. Coffey's aspirations about the birth of her child and were relevant to the sentence for her murder. *See State v. Rocheville*, 310 S.C. 20, 425 S.E.2d 32, *cert. denied*, 508 U.S. 978, 113 S.Ct. 2978, 125 L.Ed.2d 675 (1993) (parents' testimony about their families' reliance on their murdered sons was proper). Finally, the photographs support the statutory aggravating circumstances that two persons were murdered by appellant during one course of conduct[4] and one of the victims was a child under the age of eleven. *See* S.C.Code Ann. § 16–3–20(C)(a)(9) & (10). The trial judge did not abuse his discretion in admitting the two photographs during the sentencing phase of the trial.

## III.

 During the sentencing phase, Lance Black, an inmate at McCormick Correctional Institute, testified as a hostile witness for the State. Black testified while appellant was incarcerated at McCormick before trial, appellant told him he had "planned" the accident defense. According to Black, appellant told him he had killed Ms. Coffey because she was going to turn him into the police, presumably for drug offenses.

To rebut Black's testimony, defense counsel called attorney Jack Swerling.[5] Swerling testified three days after the shooting, appellant came to his office, intending to turn himself into the police. Swerling testified there was a warrant for appellant's arrest. Appellant gave Swerling a brief explanation of the shooting. The solicitor objected when defense counsel asked Swerling what appellant had said about the shooting.

---

4. The State admitted a photograph of Ms. Coffey wearing a modeling costume with no objection from appellant.

5. Swerling was not appellant's trial attorney. During sentencing, appellant waived his attorney-client privilege with Swerling.

The solicitor argued the testimony was inadmissible hearsay. Defense counsel replied the testimony was admissible under two exceptions to the rule against hearsay and admissible as evidence of a prior inconsistent statement. The trial judge sustained the objection.

Defense counsel proffered Swerling's testimony. Swerling testified appellant told him he shot his girlfriend and child by accident. Swerling's notes state: "The defendant and girl had gun. Gun went off accidentally."

Appellant now argues the trial judge erred in excluding his prior consistent statement made to Swerling. Appellant contends, pursuant to Rule 801(d)(1)(B), SCRE, the testimony was not hearsay and exclusion of the testimony violated his due process. We disagree.

At trial, appellant argued Swerling's testimony regarding his prior statement, albeit hearsay, was admissible as an exception to hearsay.[6] In addition, he argued the testimony was admissible as extrinsic evidence of a prior *inconsistent* statement. Rule 613(b), SCRE. Appellant did not argue his prior consistent statement was admissible under Rule 801(d)(1)(B). Accordingly, his current issue is not preserved for appellate review. *State v. Byram*, 326 S.C. 107, 485 S.E.2d 360 (1997); *State v. Tucker*, 319 S.C. 425, 462 S.E.2d 263 (1995), *cert. denied*, 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996) (an issue is not preserved for appellate review where a party argues one ground in support of relief at trial and a different ground on appeal).

In any event, Rule 801(d)(1)(B), SCRE, provides, in relevant part, as follows:

**Statements which are not hearsay.** A statement is not hearsay if—

**Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent

---

**6.** Appellant argued the testimony was admissible under the present sense impression and excited utterance exceptions to the rule against hearsay. Rule 803(1) & (2), SCRE.

fabrication or improper motive; provided, however, the statement must have been made before the alleged fabrication, or before the alleged improper influence or motive arose, . . . .

According to the commentator's note, except for the proviso, Rule 801(d)(1)(B), SCRE, is consistent with the Federal Rules of Evidence. The proviso was added to reflect the United States Supreme Court's interpretation of the federal rule in *Tome v. United States*, 513 U.S. 150, 167, 115 S.Ct. 696, 705, 130 L.Ed.2d 574, 588 (1995) (Rule 801(d)(1)(b) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive."). The modification is similar to the pre-rules case law in this state holding the prior consistent statement must have been made before the declarant's "relation to the cause." *Jolly v. State*, 314 S.C. 17, 443 S.E.2d 566 (1994); *Burns v. Clayton*, 237 S.C. 316, 117 S.E.2d 300 (1960).

Appellant's prior consistent statement to Swerling was not admissible under Rule 801(d)(1)(B), SCRE. First, although appellant did testify during the guilt phase of trial, he was not subject to cross-examination concerning his statement to Swerling, as the evidentiary rule requires. In fact, appellant could not have been cross-examined about his statement to Swerling without violation of appellant's attorney-client privilege.

Second, although his statement to Swerling was made prior to the time Black alleged appellant had fabricated his accident defense (while appellant was in jail awaiting trial), the statement was not made before appellant had a motive to fabricate a defense. At the time appellant made the statement to Swerling, he was planning to turn himself into the police for shooting Ms. Coffey. Appellant had a motive to fabricate a defense or to diminish his responsibility for the shooting when he stated to Swerling the shooting was an accident. *See United States v. Forrester*, 60 F.3d 52 (2nd Cir.1995) (motive to fabricate arose when witness was arrested); *United States v. Frederick*, 78 F.3d 1370 (9th Cir.1996) (child victim's statement to police after her relatives had reported molestation

and police had begun formal investigation was inadmissible under Rule 801(d)(1)(B), FRE); *United States v. Moreno,* 94 F.3d 1453 (10th Cir.1996) (witness had motive to concoct story as soon as he was arrested); *United States v. Albers,* 93 F.3d 1469 (10th Cir.1996) (where witness admitted he did not agree to talk with law enforcement until he had become afraid others involved in the conspiracy would testify against him, his statement to officer came after witness had motive to falsify); *see also People v. Edwards,* 54 Cal.3d 787, 1 Cal.Rptr.2d 696, 819 P.2d 436 (1991) (where defendant's statement was made nine days after shooting, defendant had a compelling motive to deceive and seek to exonerate himself, therefore statement did not carry probability of trustworthiness). Appellant's prior consistent statement was not admissible under Rule 801(d)(1)(B), SCRE.

Finally, appellant contends exclusion of his prior consistent statement violated his due process rights because he was unable to refute Black's testimony. *See Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (a death sentence may not be imposed on the basis of information which the defendant had no opportunity to explain or deny). We disagree.

First, appellant's due process argument in support of Swerling's testimony was raised to the trial court on the day following Swerling's proffered testimony and the trial judge's denial of the admission of the testimony. Accordingly, the argument was untimely. *See State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760, *cert. denied,* —— U.S. ——, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997) (a party must make a contemporaneous objection to preserve an issue on appeal).

Second, appellant had the opportunity to cross-examine Black. Additionally, in response to Black's testimony, appellant could have testified he told Swerling the shooting was an accident. Instead, appellant chose not to testify at sentencing. Appellant had sufficient opportunity to explain or deny Black's allegation he had fabricated an accident defense. The exclusion of Swerling's testimony regarding appellant's statement did not violate appellant's right to due process.[7]

---

7. Appellant also refers to *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), where the United States Supreme Court held to

## IV.

■■■ Appellant contends the trial judge erred by instructing the jury, "You must not consider parole eligibility in reaching a decision, and you must assume that the terms 'life imprisonment' and 'death sentence' should be understood in their ordinary and plain meaning." Appellant contends the charge improperly injected the issue of parole into the jury's deliberations.

While discussing final summations, the trial judge instructed counsel not to refer to parole. Defense counsel stated: "We will request a *Norris* [8] charge." The solicitor agreed the charge was appropriate. Thereafter, defense counsel stated: "Judge, just to be clear, we can argue life means life ...". The following morning, during the charge conference, defense counsel and the State confirmed the use of a *Norris* charge. The trial judge stated:

> ... when I tell [the jury] the two verdicts or when I tell [the jury] that at that point that they may consider the death penalty and life imprisonment, I will then give them the *Norris* charge, that they are to consider those in their ordinary, plain meaning.

Thereafter, the trial judge instructed the jury:

> You must not consider parole eligibility in reaching a decision, and you must assume that the terms life imprisonment and death sentence should be understood in their ordinary and plain meaning.

---

prevent a defendant from being deprived of a fair trial, the due process clause requires admission of the exculpatory confession of a third party offered through hearsay, even if state evidentiary rules prohibit its admission, where the evidence is reliable (a statement against penal interests) and highly relevant to a critical issue in the case. Here, because appellant had a motive to reduce his responsibility for the shooting, his statement to Swerling is not inherently reliable. *See Huffington v. Nuth,* 140 F.3d 572 (4th Cir.1998) (where hearsay statement was not reliable, it is not error to disallow its admission); *Cunningham v.. Peters,* 941 F.2d 535 (7th Cir.1991) (where third party's statement is unreliable, no error to deny its admission); *LaGrand v. Stewart,* 133 F.3d 1253 (9th Cir.1998) (where co-defendant's confession was not sufficiently reliable, no error in excluding its admission).

**8.** *State v. Norris,* 285 S.C. 86, 328 S.E.2d 339 (1985), *overruled in part on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

384

Appellant excepted to that portion of the Court's *Norris* charge which referred to parole eligibility. The trial judge overruled the exception, noting the language in the instruction was included in *Norris.*

Parole eligibility is a legislative determination. *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619, *cert. denied,* 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed.2d 862 (1984). It is not relevant to a jury's sentencing considerations. *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995), *cert. denied,* 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996).

Traditionally, any reference to parole eligibility was prohibited. "[A] jury charged with the responsibility of assessing the penalty to be suffered by an accused should not be invited, by instruction or argument, to speculate on the possible effect of pardon or parole upon the execution of the sentence imposed." *State v. Atkinson,* 253 S.C. 531, 534, 172 S.E.2d 111, 112 (1970), *vacated in part,* 408 U.S. 936, 92 S.Ct. 2859, 33 L.Ed.2d 752 (1972), *overruled in part on other grounds, State v. Torrence, supra.* In the absence of an inquiry from the jury, a defendant was not entitled to a charge allowing the jury to consider parole eligibility, *State v. Matthews,* 296 S.C. 379, 373 S.E.2d 587 (1988), or prohibiting the jury from considering parole eligibility, *State v. Butler,* 277 S.C. 543, 290 S.E.2d 420 (1982), *overruled in part on other grounds, State v. Torrence, supra; State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982), *cert. denied,* 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 367 (1983). Additionally, the trial judge was prohibited from referring to parole eligibility *sua sponte. State v. Goolsby,* 275 S.C. 110, 268 S.E.2d 31 (1980), *cert. denied,* 449 U.S. 1037, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), *overruled in part on other grounds, State v. Torrence, supra.*

In *State v. Norris, supra,* the Court set out the proper response when a jury inquires about parole:

When the issue [of parole] is raised [by the jury], the Court should instruct the jury that it shall not consider parole eligibility in reaching its decision, and that the terms 'life imprisonment' and 'death sentence' should be understood in their ordinary and plain meaning.

S.C. at 95, 328 S.E.2d at 344. A complete *Norris* charge includes two elements: 1) the jury should not consider parole

eligibility in reaching its decision (the "no concern" charge) and 2) "the terms life imprisonment and death sentence are to be understood in their ordinary and plain meanings" charge. In response to a jury's inquiry about parole eligibility, it is reversible error to omit the "ordinary and plain meaning of life and death," even if the "no concern" charge is given. *State v. Plemmons,* 296 S.C. 76, 370 S.E.2d 871 (1988); *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987). However, in response to a jury's inquiry about parole eligibility, it is not reversible error to charge "the term life imprisonment is to be understood in its ordinary and plain meaning" without instructing on "no concern." "[A] 'life imprisonment in its ordinary and plain meaning' charge necessarily precludes jury consideration of parole eligibility." *State v. Smith,* 298 S.C. 482, 487, 381 S.E.2d 724, 727 (1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990).

In *State v. Atkins,* 293 S.C. 294, 360 S.E.2d 302 (1987), *overruled in part on other grounds, State v. Torrence, supra,* this Court held the lower court properly refused the defendant's request for instructions on parole eligibility. The Court concluded, however, in the future, "if requested by the defendant, the trial judge shall charge the jury, that the term 'life imprisonment' is to be understood in its ordinary and plain meaning." *Id.,* S.C. at 300, 360 S.E.2d at 305. As an alternative to this charge, a defendant may request the trial judge instruct the jury regarding possible sentences and parole eligibility as stated in § 16–3–20 (Supp.1997) (effect of jury finding or not finding statutory aggravating circumstance on parole eligibility). *Id.* Additional information regarding a defendant's parole eligibility may be requested and charged if it is necessary to accurately state the defendant's parole eligibility. *State v. Torrence, supra.* It is reversible error to refuse an *Atkins'* request. *State v. Davis,* 306 S.C. 246, 411 S.E.2d 220 (1991).

Although appellant requested a *"Norris* charge" without further explanation, it appears he desired the court to charge only that component of *Norris* which refers to life and death should be understood in their plain and ordinary meanings. The trial judge confirmed his understanding of the requested charge by informing counsel he would charge the terms 'death sentence' and 'life imprisonment' should be considered in their

ordinary and plain meanings. He did not indicate he would refer to parole eligibility. During the instruction, however, the trial court referred to parole eligibility, even though the jury had not inquired about parole and appellant had not requested a charge on parole eligibility.

Since it is improper to refer to parole unless specifically requested by the defendant or an inquiry is made by the jury, the trial judge erred in mentioning parole eligibility during the charge.[9] *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982), *cert. denied,* 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 367 (1983) (trial judge should not speculate that parole eligibility might be considered by jury and instruct them accordingly; to do so may, in fact, inject consideration of parole into their deliberations where it may not have been before). Nonetheless, since the trial judge instructed the jury *not* to consider parole eligibility, it is presumed the jury did not in fact consider parole. *State v. Pierce,* 289 S.C. 430, 346 S.E.2d 707 (1986), *overruled in part on other grounds, State v. Torrence, supra* (jurors are presumed to follow the law as instructed). Moreover, the trial judge charged the jury "life imprisonment" and "death sentence" are to be understood in their ordinary and plain meanings. This instruction "necessarily precludes jury consideration of parole eligibility." *State v. Smith, supra,* S.C. at 487, S.E.2d at 727. Therefore, any error in referring to parole was harmless. *See State v. Goolsby, supra* (any error in instruction referring to parole was cured when trial judge later withdrew that portion of charge and affirmatively instructed jury to consider the alternative sentences of the death penalty or life imprisonment without regard to parole).[10]

## PROPORTIONALITY REVIEW

After reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any

9. In his brief, appellant argues for the first time the trial judge's instruction to "assume" life imprisonment and death sentence should be understood in their ordinary and plain meanings was error. Since there was no objection to this instruction below, the issue is not preserved for appellate review. *State v. Johnson,* 315 S.C. 485, 445 S.E.2d 637 (1994) (failure to object to jury charge constitutes a waiver of the right to raise the issue on appeal).

10. We caution attorneys to clearly state the specific language of a requested charge rather than relying on a term of art.

other arbitrary factor, and the jury's finding of statutory aggravating circumstances is supported by the evidence. *See* S.C.Code Ann. § 16–3–25 (1985). Further, we hold the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *See State v. Simpson,* 325 S.C. 37, 479 S.E.2d 57, *cert. denied,* —— U.S. ——, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1997); *State v. Humphries,* 325 S.C. 28, 479 S.E.2d 52, *cert. denied,* —— U.S. ——, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1996); *State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689, *cert. denied,* 519 U.S. ——, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996); *State v. Williams, supra; State v. Hudgins,* 319 S.C. 233, 460 S.E.2d 388 (1995), *cert. denied,* 516 U.S. 1096, 116 S.Ct. 821, 133 L.Ed.2d 764 (1996); *State v. Rocheville, supra; State v. Sims,* 304 S.C. 409, 405 S.E.2d 377 (1991), *cert. denied,* 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992); *State v. Green,* 301 S.C. 347, 392 S.E.2d 157, *cert. denied,* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990); *State v. Cain,* 297 S.C. 497, 377 S.E.2d 556 (1988), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 764 (1990).

**AFFIRMED.**

TOAL, Acting C.J., and WALLER, J., concur.

GEORGE T. GREGORY, Jr., Acting Associate Justice, concurs in majority opinion in result only.

MOORE, J., concurs in result only in separate opinion.

MOORE, Justice:

Because I disagree that the statutory aggravating circumstance set forth in S.C.Code Ann. § 16–3–20(C)(a)(10) (Supp. 1997) was properly submitted to the jury, I concur in result only.

The majority concludes a viable fetus qualifies as "a child eleven years of age or under" for purposes of the aggravating circumstance in § 16–3–20(C)(a)(10). Contrary to the majority's analysis, it is my view that whether a viable fetus is a "person" for purposes of murder does not determine the issue of its qualification as a person of a certain age under this aggravating circumstance. *See State v. Horne,* 282 S.C. 444,

319, S.E.2d 703 (1984) (recognizing a viable fetus is a "person" within the statutory definition of murder).

All murders involve the killing of a person but, under our statutory scheme, not all murders are capital offenses. In particular circumstances, the victim's status as a member of a certain class of persons elevates murder to a capital offense, for instance, murder of a judicial officer, law enforcement officer, solicitor, fireman, or witness. § 16–3–20(C)(a)(5), (7), and (11). The murder of a child eleven years or younger is one of these "status" aggravating circumstances. Because of the increased penalty determined by these aggravating circumstances, the language defining the class of victim must be strictly construed against the State and in favor of the defendant. *See State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991) (penal statute strictly construed).

I would hold a viable fetus is not included within a class of persons statutorily defined simply by age. The age of a person is invariably calculated from birth and not conception. When strictly construed, this age-defined class necessarily includes only those persons already born. Under the majority's holding, will we now calculate age from the time of viability to determine if a victim falls within this class?

Consistent with my dissent in *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997), I find the statutory language here evinces no legislative intent to include a viable fetus in this class of victim. Not until the majority's 1997 decision in *Whitner* did any decision of this Court hold a viable fetus was included in a statutorily age-defined class. The legislature clearly could not have been aware of this new rule at the time the statutory aggravating circumstance in question here was enacted in 1990. *See* 1990 S.C.Act No. 604, § 15.

Moreover, in light of the State's position at oral argument that a woman who aborts a viable fetus could be sentenced to death under the rule adopted by the majority in this case, we must exercise extreme caution not to exceed the legislative intent as expressed in the statutory language. Allowing the imposition of death in such a case is a matter that must be tested by full legislative debate and deliberation; it is not for this Court to determine.

Because I believe this aggravating circumstance should not have been submitted to the jury under the facts of this case, I concur in result only. *See State v. Elkins*, 312 S.C. 541, 436 S.E.2d 178 (1993) (failure of one aggravating circumstance does not require reversal where there remains another valid aggravating circumstance upon which the sentence of death is based).