527 S.E.2d 101

**The STATE, Respondent,**

v.

**Timothy D. ROGERS, Appellant.**

**No. 25032.**

Supreme Court of South Carolina.

Heard Oct. 21, 1998.
Decided Jan. 24, 2000.

436

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

## ORDER

We grant the Petition for Rehearing to review our decision in *State v. Rogers,* Op. No. 25032 (S.C.Sup.Ct. filed Dec. 6, 1999) (Shearouse Adv. Sh. No. 37 at 63). That opinion is withdrawn and the attached opinion is substituted in its place.

/s/ Ernest A. Finney, Jr., C.J.

/s/ Jean H. Toal, J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

TOAL, Justice:

Timothy Rogers has appealed his death sentence for murder. He argues that the resentencing judge improperly denied his request for a mitigating jury charge. We disagree and affirm.

### FACTUAL/PROCEDURAL BACKGROUND

There are different versions of the factual events leading up to Timothy Rogers's shooting of Stephanie Burditt. These

accounts, and the history of this case, can be found in our decision *State v. Rogers,* 320 S.C. 520, 466 S.E.2d 360 (1996).

On November 25, 1992, Rogers shot and killed nine-year-old Stephanie Burditt. A jury found Rogers guilty of murder. On appeal, this Court affirmed Rogers's murder conviction, but reversed his death sentence and remanded for resentencing due to jury instruction errors made during the sentencing phase.[1] At Rogers's resentencing, the State again sought the death penalty based on the following aggravating circumstances: (1) Rogers, by his act of murder, knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which normally would be hazardous to the lives of more than one person; and (2) Rogers killed a child under the age of eleven-years-old. *See* S.C.Code Ann. § 16–3–20(C)(a) (Supp.1998). The jury returned a unanimous finding that Rogers had killed a child under the age of eleven and recommended death. The judge imposed the sentence of death.

Prior to his murder conviction, Rogers's criminal record included:

(1) November 1985: Trespassing After Notice;

(2) July 1986: Carrying a Pistol;

(3) April 1987: Possession of Marijuana;

(4) July 1987: Shoplifting;

(5) March 1988: Resisting Arrest;

(6) December 1988: Grand Larceny of a Vehicle;

(7) September 1990: Possession of Cocaine;

(8) August 1992: Criminal Sexual Conduct with a Minor;

(9) September 1992: Criminal Sexual Conduct with a Minor.

Tonya Bickham, a witness to the killing of Stephanie Burditt, had been Rogers's girlfriend before his arrest and conviction

---

1. The trial court improperly denied Rogers a *Simmons* charge on parole ineligibility. *See Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (holding that when a capital defendant would be ineligible for parole if sentenced to life in prison and the State argues the defendant's future dangerousness as a basis for imposition of the death penalty, the defendant is entitled to have the jury informed of his ineligibility for parole either by way of arguments by defense counsel or instruction by the trial judge).

for murder. At the time, Ms. Bickham was only fifteen-years-old and Rogers's two CSC convictions are a result of their relationship. Ms. Bickham is also the mother to one of Rogers's five children and was pregnant with this child at the time of the murder. The only evidence produced at trial shows that their sexual relationship was mutually desired.

During Rogers's resentencing, defense counsel requested the judge to give the statutory mitigating charge as set out in S.C.Code Ann. § 16–3–20(C)(b)(1) (Supp.1998). The judge refused because he believed Rogers's previous convictions of CSC second prevented giving the charge. The issue before this Court is whether the judge erred by refusing to instruct the jury, under S.C.Code Ann. § 16–3–20(C)(b)(1), to consider that Rogers had "no significant history of prior criminal conviction involving the use of violence against another person."

## LAW/ANALYSIS

Pursuant to S.C.Code Ann. § 16–3–20(C) (Supp. 1998), the trial judge must submit for the jury's consideration any statutory mitigating circumstances supported by the evidence. *State v. Victor,* 300 S.C. 220, 224, 387 S.E.2d 248, 250 (1989). Once the trial judge has made an initial determination of which statutory mitigating circumstances are supported by the evidence, the defendant shall be given an opportunity on the record: (1) to waive the submission of those he does not wish considered by the jury; and (2) to request any additional mitigating statutory circumstances supported by the evidence that he wishes submitted to the jury. *Id.* Under section 16–3–20(C)(b)(1), if the judge makes the determination that the defendant does not have "a significant history of prior criminal conviction involving the use of violence against another person" then he is entitled to the mitigating jury charge stating that fact to the jury. When the General Assembly enacted the death penalty statute in its current form on June 8, 1977, the Code did not define for trial judges which crimes involved "violence against another person" that would preclude giving this mitigating jury charge.

Our primary function in interpreting the death penalty statute, as with any statute, is to ascertain the intention of the General Assembly. *See Busby v. Moore,* 330 S.C. 201,

203, 498 S.E.2d 883, 884 (1998) ("The Court's primary function in interpreting a statute is to ascertain the intent of the General Assembly."). In 1986, the legislature enacted S.C.Code Ann. § 16–1–60 which states: "For purposes of definition under South Carolina law a violent crime includes the offenses . . . criminal sexual conduct with minors, first and second degree." S.C.Code Ann. § 16–1–60. By providing a list of the crimes which are to be defined as violent, the legislature ended the necessity for a case-by-case analysis into the specific convictions of each defendant's history. The lengthy list of statutory sections found in the "cross references" to section 16–1–60 reveals the legislative intention for a uniform definition of violent crimes throughout the Code. We do not believe the legislature intended there to be situations where the courts would treat offenses defined as "violent crimes" under one section and not treat these same offenses as "crimes involving the use of violence" under another section of the same title.

CSC second is a "violent crime" under section 16–1–60. *See also Gaster v. Evatt*, 326 S.C. 33, 483 S.E.2d 197, 198 (1997).[2] Rogers argues that his two convictions should not be treated as "crimes involving violence against another person" because he contends his sexual conduct with a minor was consensual and therefore should not constitute a "prior criminal conviction involving the use of violence against another person." We disagree. In section 16–1–60 the legislature spoke on the issue of which crimes are violent crimes and which crimes are not. Rogers's construction of the law would result in cases where offenses designated as violent crimes by the legislature would not be considered violent by the court. Rogers's argument also ignores the legislature's intent and policy in enacting the CSC second statute. *See Doe by Doe v. Greenville Hosp. System*, 323 S.C. 33, 37, 448 S.E.2d 564, 566 (Ct.App. 1994) ("As a matter of public policy, the General Assembly has determined a minor under the age of sixteen is not capable of

---

2. In Rogers's first trial, this Court noted that "Rogers was convicted of violating S.C.Code Ann. § 16–3–655 (1985) (criminal sexual conduct with a minor), which crimes we find constituted violent crimes. . . ." *State v. Rogers*, 320 S.C. 520, 526 n. 1, 466 S.E.2d 360, 363 n. 1 (1996). Although this recognition is not the law of the case in the current matter, the results reached are the same.

voluntarily consenting to a sexual battery committed by an older person.").

In the current case, the legislature designated Rogers's CSC offenses as violent crimes. The courts need not conduct any further inquiry into the facts of each conviction to make a determination regarding Roger's entitlement to the mitigating charge provided in section 16–3–20(C)(b)(1).[3]

### PROPORTIONALITY REVIEW

Upon review the entire record in this case, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of statutory aggravating circumstances is supported by the evidence. *See* S.C.Code Ann. § 16–3–25 (1985). Further, the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *See State v. Ard*, 332 S.C. 370, 505 S.E.2d 328 (1998); *State v. Humphries*, 325 S.C. 28, 479 S.E.2d 52 (1996).

### CONCLUSION

For the foregoing reasons, Rogers's sentence is **AFFIRMED.**

FINNEY, C.J., MOORE and WALLER, JJ., concur.

BURNETT, J., concurring separately in result.

BURNETT, Justice:

While I concur in the result reached by the majority, I disagree the enactment of § 16–1–60 "ended the necessity for a case-by-case analysis." I have reservations about this limitation on judges' discretion and its impact on pending cases. Although I agree there are no situations where the courts would not treat offenses defined as "violent crimes" under one section as "crimes involving the use of violence" under another

---

**3.** We are aware there may be some crimes involving violence against another person that are not part of the list in section 16–1–60, noticeably among them is the common law offense of assault and battery of a high and aggravated nature (ABHAN). Since the legislature has undertaken the responsibility to designate which offenses the courts will consider violent, if the General Assembly wishes to add ABHAN or any other crime to the list of violent offenses, it is within their power to do so.

section, the converse is not necessarily true. Section 16–1–60 encompasses statutory crimes, yet common law crimes may also involve the use of violence against another person. For example, as the majority notes, common law assault and battery of a high and aggravated nature (ABHAN) is not included in § 16–1–60's list of violent crimes. The interpretation of § 16–3–20(C)(b)(1) given by the majority precludes use of common law crimes of violence in a death penalty case. The legislature could not have intended for criminals with a history of violent common law crimes to be entitled to a mitigating jury charge that they have "no significant history of prior criminal conviction involving the use of violence against another person."